**UNITED STATES of America, Plaintiff,**

v.

**MALE JUVENILE,[1] Defendant.**

**No. 94–35–P.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 3, 1994.

---

1. The Court has changed the style of this case in order not to reveal the name of the juvenile    pursuant to § 5038(e).

Kent Porter, Asst. U.S. Atty., for plaintiff.

Calvin R. Depew, Jr., Rabinowitz, Rafal, Swartz, Taliferro & Gilbert, Norfolk, VA, for defendant.

**MEMORANDUM OPINION**

JACKSON, District Judge.

The defendant stands accused pursuant to 18 U.S.C. § 5031 and § 5032 of having committed certain violations of the laws of the United States prior to his eighteenth birthday which would have been crimes if committed by an adult[2]. These allegations include conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 371 and 2113(a) and (d), bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a) and (d), and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

Section 5032 forbids proceeding against a juvenile in any court of the United States unless the court receives appropriate certification from the Attorney General. The United States Attorney, as the Attorney General's designee, certified this defendant pursuant to § 5032(3), which permits the Government to proceed against a juvenile upon certification that "the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032(3). The defendant moved this Court to dismiss the proceeding on the ground that the certification was not proper because there is no substantial Federal interest in this case. After due consideration of the certification, this Court finds for the reasons set out below that the certification is improper. Since proper certification is a jurisdictional requirement, *U.S. v. Juvenile Male*, 923 F.2d 614, 616–17 (8th Cir.1991), the defendant's motion to dismiss is GRANTED.

*Factual and Procedural Background*

On September 8, 1993, the defendant and his uncle, an adult, allegedly robbed the Bank of Suffolk in Whaleyville, Virginia of approximately $2900.00. Both are alleged to have been carrying firearms at the time, although, unlike his accomplice, the defendant is not alleged to have pointed his weap-

---

2. The defendant was seventeen at the time of the alleged offenses but has subsequently turned eighteen. Since he had not yet attained his eighteenth birthday at the time of the acts he is alleged to have committed, he was a juvenile for the purposes of the commission of the acts and, since he has not yet attained his twenty-first birthday, he remains a juvenile for the purposes of these proceedings. 18 U.S.C. § 5031.

on at anyone. He is, however, accused of having threatened bank employees with death if they did not follow his orders more quickly.

On September 10, 1993, the defendant was charged in state court in the City of Norfolk with robbery and murder in connection with an unrelated pizza parlor holdup he allegedly committed in December of 1991. On September 13, 1993, the Commonwealth's Attorney filed charges relating to the bank robbery in state court against the defendant and his accomplice, and filed additional charges against the defendant relating to the same incident on September 20, 1993. On September 15, 1993, the defendant admitted his participation in the bank robbery to a state probation officer, but denied committing the murder. On October 26, 1993 the defendant was transferred to adult status in state court for the purposes of the charges pending against him in connection with the bank robbery. The charges stemming from the pizza parlor holdup and murder were nol prossed on November 5, 1993, allegedly because the key witness, who also happened to be the defendant's uncle and alleged accomplice in the bank robbery, would not testify against him. The State subsequently indicted the defendant for crimes associated with the bank robbery on November 22, 1993, scheduled trial for both the defendant and his uncle for December 30, 1993, and continued the case to February 10, 1994.

On December 10, 1993 the United States Attorney's Office sought authorization from the Attorney General to seek transfer of the defendant to adult status under § 5032. On December 22, the Attorney General authorized the U.S. Attorney to seek transfer. On February 4, 1994 the United States Attorney filed a complaint against the defendant and submitted a certification to the Court pursuant to § 5032(3). The Court held an initial appearance for the defendant on February 11, 1994 and appointed counsel for the defendant. The state court has continued the trial of the defendant and his uncle [3].

The defendant also has a prior conviction. In February of 1992, the defendant was charged with aggravated assault and the use of a firearm in the commission of a felony for shooting another individual in the face and chest. He pled guilty to a reduced misdemeanor charge.

*Analysis of Law*

The defendant has challenged the certification in this case on the basis that there is no substantial Federal interest which would warrant the exercise of Federal jurisdiction. The United States counters that such a Federal interest does exist, and that in any event, this Court does not have the authority to review the United States Attorney's certification.

The case law relating to the reviewability of the Attorney General's certification of juveniles is somewhat sparse. In *United States v. Hill*, 538 F.2d 1072 (1976), the Fourth Circuit declined to decide the issue as it was unnecessary on the facts of that case. Other Circuits, however, have addressed the question of the reviewability of § 5032 certifications generally, but none has yet spoken on the issue of the reviewability of a finding of substantial Federal interest [4].

In *United States v. Vancier*, 515 F.2d 1378 (2nd Cir.1975), cert. denied 423 U.S. 857 (1975), the Second Circuit held that certification is not subject to judicial review. That case involved a challenge to the Attorney General's certification that no appropriate state court had jurisdiction over the defendant, since although the New York State Juvenile Court did not have jurisdiction, the New York City Criminal Court did. The

3. The U.S. Attorney's office also filed a warrant in Federal court against the defendant's accomplice in late January or early February. Although there is currently a detainer against him at the state facility at which he awaits trial on the state charges, no Federal charges have been filed against him to date. The Assistant United States Attorney has represented to the Court that the Government seeks to try both defendants together in Federal court, and that the State will nol pros its charges against both upon their indictment in Federal court.

4. Cases decided before 1984 could not have dealt specifically with the issue of the reviewability of a determination that there was a substantial Federal interest since § 5032(3) was not added to the list of justifications for certification until that year. Prior to 1984, § 5032 only provided for certification based upon § 5032(1) and (2).

Court found that the Act contains no provision for judicial review of certification and no standards by which to evaluate whether an appropriate court has jurisdiction or whether adequate programs and services exist[5].

The Eleventh Circuit in *United States v. C.G.*, 736 F.2d 1474 (1984)[6], threw out a challenge to certification based on a claim that, contrary to the certification, a state court actually did have jurisdiction. The Court adopted the reasoning of *Vancier* and held that absent bad faith, a certification is only reviewable for compliance with § 5032, not for the truth of the matters certified.

The Eighth Circuit, however, distinguished *Vancier* and *C.G.* when it spoke on the issue. In *U.S. v. Juvenile Male*, 923 F.2d 614 (8th Cir.1991), certification was challenged by a juvenile charged with conspiring to travel in interstate commerce for the purpose of committing a murder on the grounds that the conspiracy was not a crime of violence. The Court found review proper since "no question exists as to the standard we should apply to determine whether the crime alleged" falls under the statute and "we are doing nothing more than reviewing the certification for compliance with § 5032—i.e. whether the United States Attorney certified that one of the crimes specified by Congress has been alleged." *Id.* at 617[7].

The Court notes at the outset that the defendant alleges bad faith on the part of the United States Attorney in granting certification in this case. While the defendant did not fully establish this allegation, the Court does have grave concerns that the case was certified for reasons other than those articulated by the Government at the hearing[8].

■ This Court believes that the case before it is more properly analyzed under *Juvenile Male* than it is under *Vancier* and *C.G.* The fact that this case does not raise a substantial Federal interest is obvious on the face of the certification. A mere glance at the Senate Judiciary Committee Report relating to the addition of subsection 3 provides ample confirmation that this crime was not intended by Congress to be included among those which would precipitate jurisdiction over a juvenile. The Report states that:

> the Committee intends that a determination that there is a "substantial Federal Interest" be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States. *Id.*, quoting S.Rep. No. 225, 98th Cong., 2nd Sess. 389, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3529.

Though the list of crimes is not exhaustive, a single instance of ordinary bank robbery is

---

5. The District of Maryland, in a statement which was clearly dicta, has suggested limits to the broad language of *Vancier*, saying that "to the extent the non-reviewable argument is viable, it is viable only as applied to review of the merits of state court refusal to accept jurisdiction" not as to the fact that a state prosecutor, not court, declined jurisdiction. *U.S. v. Ramapuram*, 432 F.Supp. 140, 143 fn. 5 (D.Md.1977), aff'd without op., 577 F.2d 738 (4th Cir.1978), cert. denied 439 U.S. 926, 99 S.Ct. 309, 58 L.Ed.2d 318 (1978).

6. This case was decided before the 1984 amendment adding § 5032(3) went into effect.

7. Although this case addressed the "crime of violence" prong and not the "substantial Federal interest" prong of § 5032(3), the fact remains that the only Circuit court to address the issue of review of the third justification for certification found such review to be proper.

8. The United States Attorney waited almost three months from the time of the offenses to the time it sought authorization from the Justice Department for transfer. In contrast, the State charged the defendant five days after the offenses. The letter seeking authorization, however, came only one month after the murder charges against the defendant were nol prossed in state court; and the nol pros of the charge clearly constituted a substantial component of the justification the United States Attorney provided the Justice Department for transferring the defendant for Federal criminal prosecution. Also relevant here is the fact that, although the defendant eventually pled not guilty, he admitted commission of the bank robbery to a probation officer seven days after the offense. Moreover, the Government took absolutely no action against the defendant's accomplice in Federal court until late January.

clearly different in kind from those offenses suggested by the Report. If the offenses at issue were deemed to be of similar "substantial Federal interest", the list of offenses that would likewise fall within the ambit of the statute would be extensive. In fact, such concern could be found in virtually any case involving a violent Federal felony and the "substantial Federal interest" language would be reduced to mere surplusage. Therefore, since the Government's interest in an ordinary bank robbery, absent some allegation of a special *Federal* concern, per se does not rise to the level of a substantial Federal interest, this Court does not believe that the certification is in compliance with § 5032 [9].

■ Even if this Court did not believe that the absence of a substantial Federal interest was clear on the face of the certification, there are compelling policy reasons for not applying the limits imposed by *Vancier* and *C.G.* to review of the certification of a substantial Federal interest. As noted above, those decisions only dealt with the first two justifications for Federal jurisdiction under 5032 and not with the "substantial Federal interest" prong of the third. The district court has a much more significant interest in ensuring that the "substantial Federal interest" requirement is closely followed than the requirements stated in the first two justifications for certification. This is because limiting review of prosecutorial discretion to allegations of bad faith in certification under the first two justifications will not substantially increase the volume of juvenile cases tried in Federal court. On the other hand, accepting the Attorney General's certification of a "sub-

stantial Federal interest" without review would open the doors to Federal court whenever a juvenile has committed a violent felony for which there is concurrent jurisdiction.

This would clearly contravene the purpose of the certification requirement, which "encompasses a recognition of the general policy of federal abstention" *U.S. v. Sechrist,* 640 F.2d 81, 84 (7th Cir.1981) citing 120 Cong. Rec. 25162 (1974) and was designed to "help ensure that state and local authorities would deal with juvenile offenders wherever possible, keeping juveniles away from the less appropriate federal channels." *U.S. v. Juvenile Male,* 864 F.2d 641, 644 (9th Cir.1988), citing S.Rep. No. 1011, 93rd Cong., 2d Sess. (1974) *reprinted in* 1974 U.S.Code Cong. & Admin.News 5283. It would also do violence to the obvious purpose of including the "substantial Federal interest" language in the 1984 amendment [10]. Therefore, review is appropriate in the interests of upholding the policy behind § 5032, *See United States v. Juvenile,* 599 F.Supp. 1126, 1130 (D.Or.1984), and policing the volume and content of the district court's docket.

■ The justifications for certification in the instant case submitted by the United States at the hearing do not satisfy the Court that certification is proper, nor when taken together with the certification, do they even put the certification facially in compliance with § 5032. To establish a "substantial Federal interest," the Assistant U.S. Attorney argued that the bank in question was FDIC insured; that the robbery was particularly violent in that the defendant threatened

9. While it may be true that in other cases, a question could exist as to the standard to be applied in determining whether Congress intended a certification of a substantial Federal interest in a given crime to be proper, this Court believes that under any reasonable standard, ordinary bank robbery was not intended to be included. Therefore, review in this case accords with the Court's articulation of the proper circumstances for review in *Juvenile Male,* 923 F.2d at 617.

10. While § 5032(3) certainly decreased the scope of Federal abstention, the Congress did not mean to allow all Federal violent felonies to be litigated in Federal court; hence the insertion of the "substantial Federal interest" language. See 1984 U.S.Code.Cong. & Admin.News 3529. (The

Committee has limited the provision to serious violent felonies and drug offenses so that the Federal Government will continue to defer to state authorities for less serious juvenile offenses. Moreover, the Committee intends that a determination that there is a substantial Federal interest be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States.)

to kill certain bank employees; that roughly twenty-five percent of bank robberies in this district are tried in Federal court[11], and those are usually cases like this one which involve violence; and that the defendant has a violent background[12].

These reasons are unpersuasive. The robbery of roughly $2900.00 obviously did not threaten the Bank of Suffolk with insolvency for which the FDIC would be liable. Additionally, as the above mentioned statistics suggest, the Government certainly does not always prosecute individuals who rob banks which are FDIC insured. The fact that the offense involved violence cannot here be taken to establish a substantial Federal interest since that is already a separate prerequisite to trying a juvenile in Federal court[13]. The language of the statute is conjunctive precisely in order to ensure both requirements are met.

■ Nor can the mere fact that a given offense is a Federal crime which Federal authorities sometimes elect to prosecute instead of deferring to the state for prosecution on analogous state charges be taken as evidence that there is a substantial Federal interest because such an interest is not a prerequisite to trying adults in Federal court. Lastly, the defendant's criminal history also does not give rise to a sufficient interest. If it did, this Court would have jurisdiction over every juvenile with a record involving violent acts who sells a controlled substance in violation of 21 U.S.C. § 841. This result would make a mockery of the general policy of abstention underlying the certification requirement[14].

**11.** The Assistant U.S. Attorney also contends that in some districts, all bank robberies are tried in Federal court.

**12.** The Court takes note of the fact that the defendant's criminal history includes a prior conviction for assault and the murder and robbery charges which were nol prossed.

**13.** This is not to say that no level of violence, no matter how extraordinary, can establish a substantial Federal interest, but only that the rather typical level of violence employed in this case, distressing as such violence may be, cannot be said to do so.

*Conclusion*

■ For the above stated reasons, this Court finds the certification of the defendant to be fundamentally inadequate. As the Eighth Circuit has noted, failure to comply with § 5032 is a jurisdictional defect. *Juvenile Male*, 923 F.2d at 616–17. Therefore, this Court is without jurisdiction to hear the United States Attorney's motion for transfer, and the defendant's motion to dismiss is accordingly GRANTED[15].

The Clerk is DIRECTED to send a copy of this order to the United States and counsel for the defendant.

IT IS SO ORDERED.

**14.** The Court's conclusion might be different, however, if the defendant's history involved prior Federal offenses, but that is not the case at bar.

**15.** Since the Court's ruling on the question of jurisdiction is dispositive, the Court need not reach defendant's request to dismiss the complaint based on a claim of a violation of the Speedy Trial Act and on defendant's assertion that conspiracy to commit bank robbery is not a crime of violence upon which jurisdiction can be established.