**UNITED STATES of America**

v.

**W.P., Jr.**

**Cr. No. 95–16–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 6, 1995.

Order Denying Motion to Dismiss
Sept. 22, 1995.

Roianne Houlton Frith, Roianne Frith & Associates, Montgomery, AL, for defendant T.B.

Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, for defendant W.P., Jr.

Barry D. Woodham, Haskell, Slaughter, Young, Johnston & Gallion, Montgomery, AL, for defendant S.B.

Terry F. Moorer, U.S. Attorney's Office, Montgomery, AL, for plaintiff U.S.

*ORDER*

MYRON H. THOMPSON, Chief Judge.

On January 3 and 5, 1995, the United States Attorney General certified defendant W.P., Jr., a minor, for prosecution under the Juvenile Justice and Delinquency Act of 1974, as amended, 18 U.S.C.A. §§ 5031–5042 (West 1985 & Supp.1995). W.P. is charged in an information with one count of bank robbery by use of a dangerous weapon in violation of 18 U.S.C.A. § 2113(a) & (d) (West Supp.1995) and with another count of commission of a crime by use of a dangerous weapon in violation of 18 U.S.C.A. § 924(c)(1) (West Supp.1995).[1] This cause is now before the court on W.P.'s motion to dismiss the

---

1. It appears that both counts in the information arose from the same event. However, inexplicably, count one charges that the offense occurred on December 30, 1994, and count two charges that the offense occurred on August 28, 1992.

certification.[2] W.P. argues that one of the requirements for certification—"a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction," 18 U.S.C.A. § 5032 (West Supp.1995)—is absent. He further argues that the government's continued prosecution of him is in bad faith.

## I. FACTUAL BACKGROUND

On December 30, 1994, the local branch of a bank in Montgomery, Alabama, was robbed of cash totalling $17,672.16. The evidence indicates that the events leading up to the bank robbery were as follows: Four days before the robbery, four 16–year olds met to discuss the robbery. These minors included W.P., T.B., and S.B. They had one false start a day or two before the actual robbery. W.P. and T.B. entered the bank with plans to rob it but decided that the bank was too crowded at that time and did not execute their plans.

On December 30, S.B. entered the bank, requested coin wrappers, and left the bank. W.P. and T.B. then entered the bank. T.B. requested coin wrappers from the teller, and W.P. displayed a weapon and demanded money. W.P. fled with $17,672.16, while T.B. remained inside the bank. S.B. waited outside the bank during the robbery. W.P., T.B., and S.B. were subsequently arrested.

## II. PROCEDURAL BACKGROUND

The Juvenile Justice and Delinquency Act provides that the United States Attorney General may proceed against a juvenile in federal court if she, or her delegate, certifies to the district court "that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ...," and "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C.A. § 5032 (West Supp.1995).[3] On January 3 and 5, 1995, the United States Attorney for the Middle District of Alabama, acting on behalf of the United States Attorney General, certified to the court that W.P., T.B., and S.B. were charged with "an offense described in ... Section 5032, and that there is a substantial federal interest in the case and the offense which warrants the exercise of federal jurisdiction." The United States Attorney filed an information charging the three with one count of bank robbery by use of a dangerous weapon and with another count of commission of a crime by use of a dangerous weapon.

The Act further provides for the discretionary and, under special circumstances, mandatory transfer and prosecution of juveniles as adults. The Act provides, upon motion by the Attorney General, for the discretionary transfer and prosecution of a juvenile as an adult if (1) the juvenile is "alleged to have committed an act after his fifteenth birthday which if committed by an adult

**2.** By order entered on January 27, 1995, Judge Ira DeMent denied the motion without comment. Judge DeMent, however, later recused himself and his January 27 order was vacated. Whether W.P.'s motion to dismiss should be granted or denied has therefore been reconsidered without any consideration of Judge DeMent's order.

**3.** Section 5032 provides more fully that, in order to proceed against a juvenile in federal court, the Attorney General, or her delegate, must certify to the district court one of the following:

"that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for

the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), or section 1002(a), 1003, 1005, 1009, or 1010(b)(1), (2), or (3) of the Controlled Substances Import and Export Act (21 U.S. 952(a), 953, 955, 959 960(b)(1), (2), (3)), or section 924(b), (g), or (h) or (x) of this title, and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction."

The court assumes that the "substantial Federal interest" phrase modifies *all* three of the preceding numbered phrases. The government has not contended otherwise.

would be a felony that is a crime of violence," 18 U.S.C.A. § 5032 (West Supp.1995), and (2) the district court finds that "such transfer would be in the interest of justice," *id.*[4]

The Act provides for the mandatory transfer and prosecution of a juvenile as an adult if (1) the juvenile is "alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense," 18 U.S.C.A. § 5032 (West Supp. 1995), and (2) the juvenile "has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed," *id.*[5]

On January 3 and 5, 1995, the United States Attorney for the Middle District of Alabama, acting on behalf of the United States Attorney, moved for the discretionary transfer and prosecution of W.P., T.B., and S.B. as adults, and for the mandatory transfer and prosecution of W.P. as an adult. On February 24, 1995, based on evidence presented by the parties, the court denied the transfer and prosecution of T.B. and S.B. as adults, and the government has elected not to proceed against them as juveniles.

Therefore, the current issue before the court is whether W.P. should be transferred and treated as an adult. W.P. contends, in his motion to dismiss, that he cannot be transferred and treated as an adult because one of the requirements for certification by the United States Attorney General—"a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction," 18 U.S.C.A. § 5032 (West Supp. 1995)—is lacking. He argues that the two offenses with which he has been charged do not rise to this level. He further contends that the government's actions in choosing to prosecute him as an adult and not to continue the prosecution of his co-defendants as juveniles after the government's motion to transfer them was denied demonstrate that the government is acting in bad faith.[6]

4. Section 5032 provides more fully as follows:
"A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence or an offense described in section 401 of the Controlled Substances Act (21 United S. 841), or section 1002(a), 1005, or 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, 959), or section 922(x) of this title, or in section 924(b), (g), or (h) of this title, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice."
18 U.S.C.A. § 5032 (West Supp.1995).

5. Section 5032 provides more fully as follows:
"However a juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense, or would be an offense described in section 32, 81, 844(d), (e), (f), (h), (i) or 2275 of this title, subsection (b)(1)(A), (B), or (C), (d), or (e) of section 401 of the Controlled Substances Act, or section 1002(a), 1003, 1009, or 1010(b)(1), (2), or (3) of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 953, 959, 960(b)(1), (2), (3)), and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, shall be transferred to the appropriate district court of the United States for criminal prosecution."
18 U.S.C.A. § 5032 (West Supp.1995).

6. The court has before it two motions by the government to transfer and treat W.P. as an adult. These motions are being held pending resolution of W.P.'s motion to dismiss.

## III. DISCUSSION

### A. Whether There Is a Substantial Federal Interest in the Case or the Offense to Warrant the Exercise of Federal Jurisdiction.

■ W.P.'s first argument is meritless because, for the reasons that follow, it is based on a faulty premise: that a district court has the authority to review whether there is "a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C.A. § 5032 (West Supp.1995). Binding precedent from the Eleventh Circuit Court of Appeals says that a district court does not. In *United States v. C.G.*, 736 F.2d 1474, 1478 (11th Cir.1984), the appellate court adopted, with one exception, "a general rule insulating certifications from review." There, the juvenile defendant, C.G., contended that the Attorney General had incorrectly stated in his certification "that the courts of the State of Alabama do not have jurisdiction over [C.G.] with respect to the alleged violations of criminal law." *Id.* at 1477. The defendant assumed "that a certification is reviewable for the truth of the matter or matters certified, i.e., that the district court, or the court of appeals, may reject a certification found to lack a sufficient basis in fact." *Id.* The Eleventh Circuit rejected this assumption. The court explained that, although "a certification is reviewable for compliance with section 5032," *id.* at 1477, "the scope of review ... is far more narrow." *Id.* The appellate court stated that the trial court "may not inquire into the correctness of the statements made in the certification," *id.* at 1477–78, and it may not "question its accuracy." *Id.* at 1478. The court listed some of the instances where the trial court may review the certification: "where the certifying party is not a proper delegate of the Attorney General, ... where the certification is not filed in a timely fashion, ... or where the certification fails to state that the state courts lack or decline jurisdiction or lack appropriate juvenile services." *Id.*

Here, with regard to W.P., the Attorney General has certified "that there is a substantial federal interest in the case and the offense which warrants the exercise of federal jurisdiction." According to the teaching of *C.G.*, this court cannot look behind that statement and question its factual accuracy.

Admittedly, at the time of the events giving rise to the opinion in *C.G.*, § 5032 did not contain language requiring that the Attorney General certify "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." The statute merely required a certification "that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles." *C.G.*, 736 F.2d at 1475 (quoting 18 U.S.C.A. § 5032 (Supp. 1984)). The "substantial Federal interest" language was added in 1984. However, even with the new language, the reasoning behind the holding in *C.G.* compels the same conclusion.

The *C.G.* court noted that § 5032 simply "does not provide for judicial review of the Attorney General's certification." 736 F.2d at 1478 (quoting *United States v. Vancier*, 515 F.2d 1378, 1380–81 (2nd Cir.), *cert. denied*, 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975)). This observation is reinforced by the structure of the statute. Section 5032 explicitly provides for judicial review of the Attorney General's decision to treat a juvenile as an adult. The statute requires that the court determine whether such treatment is "in the interest of justice." [7] Section 5032 makes no provision, by contrast, for judicial review of the Attorney General's certification. This omission must have been intended. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

7. *See supra* note 4.

The *C.G.* court further noted that § 5032 does not "set out standards by which the court could determine the correctness of a certification." 736 F.2d at 1478 (quoting *Vancier*, 515 F.2d at 1380–81). This observation is also reinforced by the structure of the statute. Section 5032 explicitly lists six factors the court must consider in determining whether a juvenile should be treated as an adult.[8] Section 5032 provides, by contrast, no standards to assist in determining whether "there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." This omission could not have been an oversight either.

The *C.G.* court observed that the certification requirement "qualifies ... prosecutorial discretion," 736 F.2d at 1478 (quoting *Vancier*, 515 F.2d at 1380–81), thereby implying that the requirement is there to guide and limit prosecutorial discretion and not judicial review. The "substantial Federal interest" language, which, as said, was added after the events giving rise to *C.G.* decision, similarly reflects an intent to qualify and limit prosecutorial discretion, and not to provide for judicial review. At issue is not only a "Federal interest," but one sufficiently "substantial ... to warrant the exercise of Federal jurisdiction." In other words, first, there must be a "Federal interest," and, second, this interest must be "substantial" enough "to warrant the exercise of Federal jurisdiction." Arguably, a court could determine whether there is a "Federal interest." But whether that "Federal interest" is sufficient enough "to warrant the exercise of Federal jurisdiction" is a subjective judgment call, more administrative than judicial in nature.

The administrative nature of this judgment call is demonstrated, perhaps best, by W.P.'s own argument that a "single instance of ordinary bank robbery" could not meet this requirement. In support of its position, W.P. notes that the Senate Judiciary Report relating to the addition of the "substantial Federal interest" language states that "[T]he Committee intends that a determination that

there is a 'substantial Federal Interest' be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns." S.Rep. No. 225, 98th Cong., 2nd Sess. 389, reprinted in 1984 U.S.C.C.A.N. 3182, 3529. The report gives as examples "an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where State boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States." *Id.* In determining whether a "substantial Federal interest" is present, a court would, as W.P. wants, typically have to limit its focus to the single offense or case before it. In that narrow and myopic context, it could reasonably be argued that a single instance of bank robbery would not meet the requirement.

But if the single instance is placed in the context of overall crime in the community, then arguably a single instance warrants the exercise of federal jurisdiction. For example, while one bank robbery might involve only a small amount of money, it could still meet § 5032's "substantial Federal interest" requirement if it were part of a wave of bank robberies, or if the crime of bank robbery reached a point where it could be reasonably viewed as a national problem comparable to "large-scale drug trafficking, or significant or willful destruction of property belonging to the United States." *Id.* An assessment of whether a single bank robbery in this broader context is substantial enough to warrant the exercise of federal jurisdiction would be an administrative, not a judicial, undertaking, drawing on such subjective assessment as the overall presence of crime, general deterrence, and enforcement priorities. As the Supreme Court explained in *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985), "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's rela-

---

8. The six factors are: "[1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psy-

chological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [and 6] the availability of programs designed to treat the juvenile's behavioral problems." 18 U.S.C.A. § 5032 (West Supp.1995).

tionship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Therefore, "the decision to prosecute is particularly ill-suited to judicial review." *Id.*

Moreover, as the Court continued, "Judicial supervision in this area ... entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute." *Id.* at 607–08, 105 S.Ct. at 1530–31.

Finally, as was pointed out in *Vancier* and noted by the appellate court in *C.G.*, the decision to certify that a particular juvenile case is appropriate for the exercise of federal jurisdiction is similar to other unreviewable decisions made by members of the executive branch:

> "[There are] several instances in which it has been held that members of the executive branch are authorized to make certain unreviewable determinations in connection with law enforcement matters. *See, e.g., Ullmann v. United States,* 350 U.S. 422, 431–34, 76 S.Ct. 497, 503, 100 L.Ed. 511 (1956) (determination by United States Attorney that the public interest requires that a witness be compelled to testify under a grant of immunity); *United States v. Singleton,* 460 F.2d 1148, 1153–55 (2d Cir. 1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973) (certification of Attorney General that proceeding is against a person believed to have participated in organized crime); *United States v. Comiskey,* 460 F.2d 1293, 1297–98 (7th Cir.1972) (certification of United States Attorney that interlocutory appeal is not being taken for purposes of delay)."

*C.G.,* 736 F.2d at 1478 (quoting *Vancier,* 515 F.2d. at 1381).

W.P. argues that accepting the government's certification of a "substantial Federal interest" without any judicial review would allow access to federal court any time a juvenile has committed a violent felony for which there is concurrent jurisdiction. As discussed above, however, whether a particular juvenile case presents a "substantial Federal interest" that "warrants the exercise of Federal jurisdiction" is not a legal question but a question of public policy, the answer to which will change over time, and one that is best left to the Attorney General's prosecutorial discretion. And leaving this call to the Attorney General will not open up the floodgates to federal courts any more than leaving the call of when and when not to indict has done so.

The Supreme Court's recent decision in *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), does not warrant a different result. There, the Court held that the Attorney General's certification under the Westfall Act, 28 U.S.C.A. § 2679(d)(1) (West 1994), that a federal employee was "acting within the scope of his office or employment" at the time of an incident giving rise to a tort claim against the employee is subject to judicial review. The Court stated that "two considerations weigh heavily in our analysis[:] ... First, the Attorney General herself urges review, mindful that in cases of the kind petitioners present, the incentive of her delegate to certify is marked. Second, when a government official's determination of a fact or circumstance—for example, 'scope of employment'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable." *Id.* at ——, 115 S.Ct. at 2231. Neither of these considerations is present here with regard to § 5032. First, the Attorney General does not urge review. Second, at issue here is not a "fact or circumstance" but, as explained above, a judgment call typically not suited for the courts.

In conclusion, this court holds that, with one exception to be explained below, the factual accuracy of the Attorney General's certification of a "substantial Federal interest" is not subject to judicial review.[9]

---

9. This court recognizes that the district court in

*United States v. Male Juvenile,* 844 F.Supp. 280

### B. Whether the Government's Continued Prosecution of W.P. Is in Bad Faith

Previously, this court stated that the Eleventh Circuit has adopted, with one exception, "a general rule insulating certifications from review." *C.G.*, 736 F.2d at 1478. This one exception is for "bad faith." *Id.* W.P. argues that the government's actions in choosing to prosecute him and choosing not to continue prosecution of his two co-defendants as juveniles once the motion to transfer them for trial as adults was denied demonstrate that the government is acting in bad faith. He contends that either there is a "substantial Federal interest" in the offense committed, and therefore in all three defendants who committed the offense, or there is not.

In *Wayte*, the Supreme Court wrote that, "although prosecutorial discretion is broad, it is not ' "unfettered." Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.' " 470 U.S. at 608, 105 S.Ct. at 1531 (quoting *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (footnote omitted)). The decision to prosecute may not be deliberately based upon race, religion, or other arbitrary classifications, including the exercise of protected statutory and constitutional rights. *Id.* Here, there is no evidence that the decision to prosecute W.P. was based on any of these factors or classifications. The United States Attorney's decision not to proceed against the two co-defendants in this case as juveniles, once this court decided not to grant the government's motion to transfer them to stand trial as adults, was a matter of prosecutorial discretion. W.P. has failed to establish that this discretion was exercised in bad faith.

### C. Whether There Was Facial Compliance with § 5032

The Eleventh Circuit stated that, although a § 5032 certification is not subject to review for factual accuracy, it is subject to review for facial compliance. The court gave as examples "where the certifying party is not a proper delegate of the Attorney General, . . .

where the certification is not filed in a timely fashion, . . . or where the certification fails to state that the state courts lack or decline jurisdiction or lack appropriate juvenile services." *C.G.*, 736 F.2d at 1477. Of course, after the events giving rise to the decision in *C.G.*, § 5032 has been amended to allow for certification if "(1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony . . .", and if "there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C.A. § 5032 (West Supp.1995).

Here, the Attorney General has merely certified that W.P. was charged with "an offense described in . . . Section 5032, and that there is a substantial federal interest in the case and the offense which warrants the exercise of federal jurisdiction." She has not indicated which of the three allowable bases for certification is the basis for certifying W.P. The court is concerned that § 5032 requires that she do this because, absent such an indication, the court cannot determine facial compliance. Furthermore, because this possible defect goes arguably to the court's jurisdiction, *see United States v. Juvenile Male*, 923 F.2d 614, 618 (8th Cir. 1991), it cannot be overlooked. W.P.'s motion to dismiss may therefore be due to be granted but for a reason other than those relied upon by him.

However, because the parties have not briefed this issue and because the Attorney General may simply want to cure the possible defect rather than brief the issue, the court will not reach the issue at this time. It will instead enter a show cause order requiring the parties to brief the issue unless the possible defect is cured.

(E.D.Va.1994), reached a contrary holding. For the reasons given by this court, it disagrees with the holding of the Virginia federal court.

Accordingly, for the reasons set forth above, it is ORDERED that the parties show cause, if any there be, in writing by September 20, 1995, as to why the motion to dismiss filed by defendant W.P., Jr. on January 23, 1995, should not be granted for the different reason stated in this order.

## ORDER

In the certification filed on September 20, 1995, the United States certified that W.P., Jr. was charged with "an offense described in Title 18, United States Code, Section 5032, which is a crime of violence that is a felony." The government has therefore cured the "possible defect" noted in part III C of the court's order of September 6, 1995.

Accordingly, it is ORDERED that the motion to dismiss filed by defendant W.P., Jr. on January 23, 1995, is denied.