**UNITED STATES of America**

v.

**JUVENILE MALE, Defendant.**

**Criminal Action No. 95–00052–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Dec. 28, 1995.

Nancy F. Spodick, Assistant U.S. Attorney, Charlottesville, VA, for the United States.

J. Thomas Love, Charlottesville, VA, for Juvenile Male.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

The government filed an information against the juvenile in this case, charging him with armed bank robbery in violation of 18 U.S.C. § 2113, and with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371. The juvenile was 16 years old on the date of the alleged robbery. The government filed a motion to transfer the case from juvenile court to federal court so that the juvenile could be tried as an adult. 18 U.S.C. § 5032.

In support of its motion to transfer, the government filed a certification stating that the juvenile is charged with a violent felony and that there is a substantial federal interest in the case which warrants the exercise of federal jurisdiction. The juvenile contends that he cannot be transferred because a substantial federal interest in this case is lacking, the government's certification to the contrary notwithstanding. He urges the court to review the government's certification, arguing that the absence of a substantial federal interest strips the court of jurisdiction over the transfer proceeding.

The court held a hearing on the government's motion to transfer on November 30, 1995. At that hearing, the court granted that motion from the bench, ruling that the court, absent bad faith, did not have authority under 18 U.S.C. § 5032 to review the substance of the government's certification of jurisdiction. The court then entered a written Order granting the transfer motion pursuant to the mandatory transfer provision of § 5032.

Because the issue of the proper scope of judicial review to be afforded jurisdictional certifications under § 5032 is one which has only sparsely been addressed, the court supplements its ruling, made from the bench, on the jurisdictional issue presented.

## I.

The Juvenile Justice and Delinquency Act, 18 U.S.C. § 5031 *et seq.* (West Supp. 1995) forms the framework for the analysis. Section 5032 provides that the United States Attorney General may proceed against a juvenile in federal court if she, or her delegate, certifies to the district court "that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ...," and "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032.[1]

1. Once the jurisdiction of the district court is established through this certification procedure, the Act further provides for the discretionary and, under special circumstances, mandatory transfer and prosecution of juveniles as adults. The Act provides, upon motion by the Attorney General, for the discretionary transfer and prosecution of a juvenile as an adult if (1) the juvenile is "alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence," 18 U.S.C. § 5032, and (2) the district court finds that "such transfer would be in the interest of justice." *Id.*

The Act provides for the mandatory transfer and prosecution of a juvenile as an adult if (1) the juvenile is "alleged to have committed an act after his sixteenth birthday which if committed

On October 25, 1995 the United States Attorney, acting on behalf of the United States Attorney General, *see* 28 C.F.R. § 0.57, certified to the court that the juvenile is charged with a violent felony as described in § 5032, and that there is a substantial federal interest in the case which warrants the exercise of federal jurisdiction. The primary issue before the court is whether it can review the government's determination that there is a substantial federal interest, given that the part of § 5032 addressing certification is silent with respect to judicial review. The court concludes that it cannot.

## II.

The juvenile cites *United States v. Male Juvenile*, 844 F.Supp. 280 (E.D.Va.1994) for the proposition that government certifications issued pursuant to § 5032 are reviewable by the district court. In that case, the juvenile was charged in an information with armed bank robbery. The government certified that there was a substantial federal interest in the case. The court, however, rejected that certification, holding that the case did not present a substantial federal interest. The court then granted the juvenile's motion to dismiss. The court's reasoning is set out below:

> The fact that this case does not raise a substantial Federal interest is obvious on the face of the certification. A mere glance at the Senate Judiciary Committee Report relating to the addition of subsection 3 [i.e. the "substantial federal interest" provision] provides ample confirmation that this crime was not intended by Congress to be included among those which would precipitate jurisdiction over a juvenile. The Report states that:
>
> > the Committee intends that a determination that there is a "substantial Federal Interest" be based on a finding that the nature of the offense or the circumstances of the case give rise to special

Federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnaping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States. S.Rep. No. 225, 98th Cong., 2nd Sess. 389, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3529.

> Though the list of crimes is not exhaustive, a single instance of ordinary bank robbery is clearly different in kind from those offenses suggested by the Report. If the offenses at issue were deemed to be of similar "substantial Federal interest", the list of offenses that would likewise fall within the ambit of the statute would be extensive. In fact, such concern could be found in virtually any case involving a violent Federal felony and the "substantial Federal interest" language would be reduced to mere surplusage. Therefore, since the Government's interest in an ordinary bank robbery, absent some allegation of a special Federal concern, per se does not rise to the level of a substantial Federal interest, this Court does not believe that the certification is in compliance with § 5032.

*United States v. Male Juvenile*, 844 F.Supp at 283–84.

Thus, that court made an independent evaluation of the propriety of the government's certification. The juvenile presently before this court asks it to do the same. However, the court finds that there is substantial case law contrary to the conclusion reached by that court.

In *United States v. Vancier*, 515 F.2d 1378 (2d Cir.) *cert. denied*, 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975), the court held that certification is not subject to judicial review because the Act contains no provision for

---

by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense," 18 U.S.C. § 5032, and

(2) the juvenile "has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed." *Id.*

judicial review of certification and because the Act does not contain standards by which a court could review a certification. Similarly, in *United States v. C.G.*, 736 F.2d 1474 (11th Cir.1984), the court held that, absent bad faith, review of certifications is limited to technical compliance with § 5032. The court held that the district court could not review whether the matters certified to are accurate.

The court in *Male Juvenile* distinguishes this case law by arguing that the cases were decided prior to the enactment in 1984 of the "substantial federal interest" justification for federal jurisdiction under § 5032. In other words, when the cases were decided, jurisdiction under § 5032 had to be premised on a certification that (1) the juvenile court or other appropriate court of a State did not have jurisdiction or refused to assume jurisdiction over the juvenile, or (2) the State did not have available programs and services adequate for the needs of juveniles. In distinguishing these cases, it was the *Male Juvenile* court's view that district courts have "a much more significant interest in ensuring that the 'substantial federal interest' requirement is closely followed than the requirements stated in the first two justifications for certification." 844 F.Supp. at 284. The court reached this conclusion because, in its view, by abstaining from review of certification, the district court "would open the doors to Federal court whenever a juvenile has committed a violent felony for which there is concurrent jurisdiction. This would clearly contravene the purpose of the certification requirement which encompasses a recognition of the general policy of federal abstention." *Id.* (internal quotation marks omitted).

This court respectfully disagrees with the ruling in *Male Juvenile* for several reasons. First, the court is unpersuaded of the force of the "floodgates" argument presented by the court in *Male Juvenile*. Juvenile cases constitute only a minor subset of criminal prosecutions. Furthermore, where courts fail to engage in substantive review of certification under § 5032, it is doubtful that all violent felonies committed by juveniles over 16 years of age will end up as adult prosecutions in federal court, assuming that the federal courts have concurrent jurisdiction over the offenses. Even if the door to federal court were open to most violent juvenile cases, there is simply no basis for assuming the U.S. Attorney would walk through it at every conceivable opportunity, any more than there is a basis for assuming that the U.S. Attorney will seek indictments against all conceivable defendants in a given criminal case. Rather, only those cases deemed by the U.S. Attorney to implicate a "substantial federal interest" would be transferred to district court. Simply stated, this court will not assume that the U.S. Attorney's Office will abuse the discretion given it under the statute.

Second, if, as held by the Second Circuit in *Vancier* and by the Eleventh Circuit in *C.G.*, a court is precluded from making an inquiry into the first two bases of jurisdiction enumerated under § 5032, that is, to the availability of an appropriate state forum or of special juvenile programs in the state, it appears to this court that it is necessarily precluded from making an inquiry into the propriety of the government's determination that a substantial federal interest exists in a given case. After all, the first two bases of federal jurisdiction are fact-specific. Either a state has an appropriate forum in which to try a juvenile or it does not. Similarly, either a state has special programs for juvenile offenders or it does not. Any inquiry designed to resolve these issues would be fairly straight-forward and would not involve clashing policy concerns. In contrast, resolving the issue of whether a substantial federal interest is implicated in any one case is a difficult task, subject to a host of policy calculations. If the court cannot do the lesser (resolve straight-forward factual disputes), it is difficult to argue that it can do the greater (resolve complicated policy issues).

Finally, the litany of examples cited in the Senate Report as constituting substantial federal interests that would warrant a transfer is best understood as a mechanism to guide the U.S. Attorney's discretion in determining which cases it should seek to transfer. It does not provide standards for judicial review. Only by making a considerable leap in interpreting legislative history can one

conclude that a bare listing of examples constitutes standards for judicial review. Absent more guidance, a simple listing of examples is just that.

For these reasons, the court does not find the reasoning and conclusion in *Male Juvenile* to be persuasive. On the other hand, the court finds persuasive the opinion of the district court in *United States v. W.P., Jr.,* 898 F.Supp. 845 (M.D.Ala.1995). The juvenile in that case was charged in an information with bank robbery by use of a dangerous weapon. The government certified that the case implicated a "substantial federal interest" and the juvenile objected. The court held that it could not substantively review the certification in the absence of alleged bad faith. In reaching its conclusion, the court made several arguments which this court finds at least persuasive, if not compelling.

First, the *W.P., Jr.* court held that the decision as to whether a federal interest is substantial enough to warrant federal jurisdiction is more administrative than judicial in nature. It calls for an assessment as to the overall presence of crime, general deterrence effects, and enforcement priorities. As a policy matter, the U.S. Attorney's Office is in a better position to evaluate these variables than is the court. Indeed, the government's authority to certify that a given case implicates a substantial federal interest is akin to the government's authority to decide which cases to prosecute. The court, as a practical matter, is ill-equipped to contribute to such an analysis. This strikes the court as the strongest argument for restricting judicial review of § 5032 "substantial federal interest" certifications.

Second, the *W.P., Jr.* court stated that while § 5032 does not provide for judicial review of the government's certification, it does explicitly provide for review of the government's decision to treat a juvenile as an adult by requiring the court to determine whether treating the juvenile as an adult would be in the interests of justice. The court held in light of this disparity that the omission with respect to review of certification was intentional. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

Third, the *W.P., Jr.* court noted that there are several instances in which it has been held that members of the executive branch are authorized to make certain unreviewable determinations in connection with law enforcement matters. For example, the U.S. Attorney can determine that the public interest requires that a witness be compelled to testify under a grant of immunity. 18 U.S.C. § 6002. *See Ullmann v. United States,* 350 U.S. 422, 431–34, 76 S.Ct. 497, 502–04, 100 L.Ed. 511 (1956); *In re Corrugated Container Anti–Trust Litigation,* 620 F.2d 1086 (5th Cir.), *reh'g denied,* 625 F.2d 1016 (1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981). The U.S. Attorney can also certify that an interlocutory appeal is not being taken for purposes of delay. 18 U.S.C. § 3731. *See United States v. Comiskey,* 460 F.2d 1293, 1297–98 (7th Cir.1972). Thus, the absence of judicial review of § 5032 certifications is not inherently problematic.

Ultimately, the court held that although it could not review certifications for factual accuracy, it could review them for facial compliance with § 5032 (i.e. to ensure that the certifying party is a proper delegate of the Attorney General, that it was filed in a timely manner, and that it asserts the presence of a substantial federal interest). The court also held that it could review certifications alleged to have been made in bad faith.

In short, this court believes that the opinion of the Alabama District Court is more persuasive than the *Male Juvenile* opinion, both from an interpretive perspective and from a policy perspective. Accordingly, the court concludes that it cannot review the substance of § 5032 certifications in the absence of alleged bad faith. Rather, the court may only make a facial inquiry into the validity of the certification.

For the sake of completeness, the court notes that it is mindful of the recent case of *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995)

in which the Supreme Court had occasion to discuss the availability of judicial review of certifications by the Attorney General in the context of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Westfall Act). Under the Westfall Act, the Attorney General is empowered to certify that a federal employee, sued for negligence, "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Upon certification, the United States is substituted for the employee as the defendant in the case. The case is then controlled by the Federal Tort Claims Act. 28 U.S.C. § 2671 *et seq.* (1994).

The Attorney General made such a certification in *Martinez* when a federal employee was sued for negligence. The plaintiffs urged the district court to review the substance of the certification because the case fell under an exception to the Federal Tort Claims Act that effectively shielded the United States from suit under the facts presented. Thus, if the certification were accepted and the government were substituted for the employee as a defendant, then the case would ultimately be dismissed. In short, the plaintiffs would have no legal recourse against any party. The district court held that it could not review the certification. The Fourth Circuit affirmed the district court but the Supreme Court reversed.

The Supreme Court held that the Westfall Act envisioned judicial review of the "scope of employment" certification. In so holding, the Court stated that

> Two considerations weigh heavily in our analysis, and we state them at the outset. First, the Attorney General herself urges review, mindful that in cases of the kind petitioners present, the incentive of her delegate to certify is marked. Second, when a government official's determination

of a fact or circumstance—for example, "scope of employment"—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable.

*Id.* at ——, 115 S.Ct. at 2227.

The five Justices comprising the majority reasoned that in the typical Westfall Act case, government certification could be relied upon as a matter of course because the certification is, in the great majority of cases, a statement by the government against its own financial interest. Indeed, the certification causes the United States to become a named defendant in the lawsuit. However, under the facts presented by *Martinez,* the "scope of employment" certification was not a declaration against interest since it effectively resulted in the dismissal of the entire case. Moreover, given that the Westfall Act explicitly allows federal employees to seek judicial review if the Attorney General denies certification in a particular case,[2] the government, had it not filed the certification, may have become embroiled in litigation with its employee—litigation which in cases like *Martinez,* would have no purpose from the government's perspective, because win or lose, it would remain immune from suit. Thus, there are "overwhelming" incentives created for filing a certification in such a case. *Id.* at ——, 115 S.Ct. at 2233. Accordingly, even the Attorney General urged the Court to sanction judicial review of the certification procedure.

The majority also reasoned that in the absence of judicial review, federal courts would be relegated to "rubber-stamp work.... The court could do no more, and no less, than convert the executive's scarcely disinterested decision into a court judgment [dismissing the case]." *Id.* at ——, 115 S.Ct. at 2234.[3]

---

**2.** *See* 28 U.S.C. § 2679(d)(3).

**3.** The Court also made a statutory argument. It read language in the statute providing that certification "shall conclusively establish scope of office or employment for purposes of removal," 28 U.S.C. § 2679(d)(2), as precluding the possibility that certification would also be conclusive as to the propriety of substituting the United States as defendant. The Court reasoned that :"Congress

spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution. Next, Congress made the Attorney General's certification conclusive solely for purposes of removal, and notably not for purposes of substitution. It follows ... that the scope-of-employment judgement determinative of substitution can and properly should be checked by the court...." *Id.* at ——, 115 S.Ct. at 2235. The statutory argument advanced by the majority in *Martinez* is inapposite to the

This court concludes that *Martinez* is not applicable to the present case because the element driving the opinion—the specter of plaintiffs being left without a remedy[4]—is, obviously, wholly absent from the present criminal case. Just as importantly, however, the rationale underlying *Martinez* is inapposite here. First, there is no suggestion that the U.S. Attorney's Office is faced with a conflict of interest in determining whether or not to certify to the presence of a "substantial federal interest" in any given case. There are no perverse incentives at play that might cause the "impetus to certify [to] become[ ] overwhelming." *Id.* at ——, 115 S.Ct. at 2233. Certainly, the Attorney General has not argued for the extension of judicial review to determinations of the presence or absence of a "substantial federal interest."

Second, the court does not believe that it is relegated to performing "rubber-stamp work" for the U.S. Attorney's Office. Indeed, in many juvenile transfer proceedings the issue of certification is only the first step. After certification, the court generally must hold a hearing, weigh at least six statutorily prescribed factors, and ultimately determine whether granting the motion to transfer would be in the "interest of justice." See 18 U.S.C. § 5032. Thus, typically the court has a major role to play in transfer proceedings once certification is made.

It is true that in transfer cases like the present one, brought before the court under the mandatory transfer language of § 5032, the court's discretion to rule with respect to the ultimate result is severely circumscribed. Indeed, the issue of whether or not to transfer a juvenile is effectively resolved once certification is made, assuming the other statutory criteria for a mandatory transfer are met. However, once a certification that a substantial federal interest exists in a given case is made, the case is far from over. Indeed, the juvenile's guilt must still be established to support a conviction. Thus,

granting a mandatory motion to transfer, without reviewing the substance of the certification, is not "dispositive of a court controversy," *id.* at ——, 115 S.Ct. at 2231, as was the case in *Martinez.* Indeed, the district court in *Martinez* was forced to dismiss the case outright as a direct consequence of the certification. The transfer certification here, in contrast, simply begins a judicial process—it does not end one.

This last point suggests that federal courts must necessarily review government certifications differently in the differing contexts of civil litigation and criminal adjudication. In other words, this court interprets *Martinez* as evidencing a concern akin to the concern routinely expressed that federal courts must be the final arbiters of the existence of federal jurisdiction in any given case. Thus, just as parties involved in civil litigation cannot consent to the exercise of diversity jurisdiction where none exits, similarly, federal courts may not allow the Attorney General to determine that jurisdiction is appropriate under the Federal Tort Claims Act because the named defendant was acting within the scope of his federal employment, if, in fact, the defendant was not so engaged at the time of the incident.

In contrast, the U.S. Attorney's power essentially to certify to the existence of federal jurisdiction in a criminal juvenile case is no different in function from the U.S. Attorney's ability to control the jurisdiction of the federal courts by bringing indictments, some of which may lack merit. The court must entertain such prosecutions even if it believes that the alleged federal offense will not hold up (absent, of course, an allegation of bad faith). This is so because the Constitution empowers the executive branch alone with the authority to bring criminal prosecutions. The judicial branch may not interpose itself into this realm. This court believes that a similar constitutional bar may exist to its determining whether or not a substantial fed-

---

present statutory debate. There is absolutely no language in the Delinquency Act addressing the effect which certification will have on the ultimate adjudication of the substantive issue. Thus, an analogous statutory argument is not available here.

**4.** *Martinez* at ——, 115 S.Ct. at 2229. (noting that in cases such as this "plaintiff may be left without a tort action against any party").

eral interest exists in prosecuting a given juvenile as an adult. *Cf. Ullmann v. United States*, 350 U.S. 422, 431–434, 76 S.Ct. 497, 502–04, 100 L.Ed. 511 (1956) (holding on separation of powers grounds that district court may not review judgment of U.S. Attorney that testimony of witness is so important as to require the court's affording the witness immunity). Certainly, the court could not review the *failure* of the U.S. Attorney to certify to the presence of a substantial federal interest in a given case. Thus, the U.S. Attorney's Office, unlike a party in a civil litigation, plays a specific role in our constitutional scheme. This court hesitates to infringe upon that role.

In sum, the court believes that *Martinez* is distinguishable in several important aspects. Accordingly, that opinion does not alter this court's judgment that it is without authority to review the substance of certifications made pursuant to § 5032.

### III.

■ With respect to the merits, the Act provides for the mandatory transfer and prosecution of a juvenile as an adult if (1) the juvenile is "alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense," 18 U.S.C. § 5032, and (2) the juvenile "has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been

such an offense if a circumstance giving rise to Federal jurisdiction had existed." *Id.*

As stated at the transfer hearing, the court finds that all the statutory elements supporting a mandatory transfer under § 5032 are met in this case. Specifically, it is conceded that the offense charged in the information, if committed by an adult, would be a felony that has as an element thereof the use or attempted use of physical force. 18 U.S.C. § 2113(a), (d). Moreover, it is clear that the juvenile is alleged to have committed the offense after his sixteenth birthday.[5] Finally, the court concludes that the juvenile was subject to a previous adjudication of a violent crime that would be a felony if committed by an adult. A "Finding of Fact" was entered on January 9, 1991, in Kings County (NY) Family Court, stating that the juvenile committed what would have been assault in the second degree if committed by an adult. Under New York law, assault in the second degree is a felony offense that has as an element thereof the causing of physical injury by means of a deadly weapon or dangerous instrument.[6] Since "[t]he term 'found guilty' includes past juvenile delinquency adjudications," *See, e.g., United States v. Juvenile Male # 1*, 47 F.3d 68, 69 (2d Cir.1995) (citing *United States v. David H.*, 29 F.3d 489, 492–493 (9th Cir.1994)), this court is compelled to conclude that the juvenile has previously been found guilty of what would have been a felony offense if committed by an adult. Thus, the court approves the mandatory transfer of the juvenile to federal court under § 5032.

### IV.

The court holds that, absent an allegation of bad faith, it may not review the substance of jurisdictional certifications made by the

---

**5.** It is worth noting that the various juvenile records compiled by the U.S. Attorney's Office contain conflicting dates of birth for the juvenile. Some record his date of birth as September 12, 1976 while others note it as October 13, 1978. If the juvenile's real date of birth is September 12, 1976, then he was almost 19 years-old on August 4, 1995, the date of the offense charged in the information. Since the juvenile statute defines a juvenile delinquent as an individual committing an act of delinquency prior to his eighteenth birthday, 18 U.S.C. § 5031, the juvenile could

not be tried as a juvenile if he was older than eighteen on August 4, 1995. The court, therefore, assumes that the juvenile's true date of birth is October 13, 1978.

**6.** Specifically, New York Penal Code § 120.05(2) defines assault in the second degree as follows: "With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

government pursuant to § 5032. The court may only inquire into the facial validity of the certification. Accordingly, the court finds that it has jurisdiction over the transfer hearing. Moreover, the court concludes that a mandatory transfer of the juvenile to federal court is warranted in this case.