**UNITED STATES of America,**
**Plaintiff,**

v.

**A.M., Defendant.**

**No. CR.A. 2:04–MJ–0073.**

United States District Court,
S.D. West Virginia,
Charleston Division.

June 23, 2004.

---

1. Document # 41.

2. Document # s 42, 61, and 78.

Steven I. Loew, Esq., Assistant United States Attorney, Charleston, WV, for the United States.

Jane Moran, Esq., Williamson, WV, for the Defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the court is the defendant's Motion to Dismiss the Information and the government's Motion to Transfer Proceedings Against Juvenile to Adult Status. Because the court lacks jurisdiction over this case, the Motion to Dismiss the Information is GRANTED and the Motion to Transfer Proceedings Against Juvenile to Adult Status is DENIED AS MOOT.

## I Factual Background and State Court Proceedings

On January 20, 2004, the juvenile defendant, T.M.[1], and four adults were arrested and taken into state custody for the robbery and shooting of Alan Townsend, an individual employed by Gino's Spaghetti House (Gino's) as a delivery man. According to the United States, one of the adults, Jenkins, telephoned Gino's and ordered food to be delivered to the Martin Luther King Center in Charleston, West Virginia. *See* United States' Brief in Support of Motion to Proceed Against Adult as a Juvenile (Brief in Support of Transfer) at 1. The United States asserts that when the five individuals approached Mr. Townsend, T.M. and two of the adults carried fire-

arms and T.M. had a bullet-proof vest. *Id.* After approaching the vehicle, an individual named Carlisle demanded money from Mr. Townsend, and someone struck Mr. Townsend in the face with a firearm. *Id.* at 1–2. The United States alleges that there is conflicting evidence about whether T.M. or Carlisle struck the victim. *Id.* at 2. Mr. Townsend then gave Carlisle twelve dollars, and as Mr. Townsend tried to escape, Carlisle discharged four rounds from his handgun. The victim suffered injuries to his spleen and stomach.[2] *Id.*

On the day of the arrest, a juvenile petition was filed against T.M. in the Circuit Court of Kanawha County, West Virginia. The petition alleges that T.M. committed First Degree Robbery in violation of West Virginia Code § 61–2–12(a), and states that T.M. was seventeen years old at the time of the alleged activity. The state court immediately issued an order to take T.M. into custody, and the court held a juvenile detention hearing. By Order dated January 21, 2004, the state court placed the juvenile in detention and set bond in the amount of $50,000. On January 26, the court appointed Diana Johnson to represent the juvenile in further proceedings. The state court held a preliminary hearing on the petition on January 30. The defendant was arraigned on February 11, at which time he entered a plea of not guilty to the charge, and the court set the matter for trial on April 20, 2004. On February 17, T.M.'s counsel submitted a motion to reduce bond, which was subse-

---

1. The juvenile defendant was originally misidentified as A.M.. His initials are actually T.M.

2. The defendant contests some of the facts alleged by the United States. First, T.M. denies that he carried a bulletproof vest the night of the robbery. Defendant's Response to Government's Motion to Transfer the De-

fendant to Adult Status (Response to Transfer Motion) at 6. T.M. also points out that Carlisle is the only individual who testified that T.M. struck the victim. T.M. asserts that Carlisle's testimony is self-serving because Carlisle is the defendant who subsequently shot the victim and who, according to T.M., actually struck the victim. *Id.* at 6–7.

quently denied by the court. The juvenile also made discovery requests on March 16, to which the State prosecuting attorney responded.

On April 16, 2004, after three months of state involvement in this matter and four days before T.M.'s case was set for trial, Philip W. Morrison, the Kanawha County Chief Assistant Prosecuting Attorney, wrote a letter to Steve I. Loew, Assistant United States Attorney, stating that "the Kanawha County Prosecuting Attorney's Office declines to prosecute [T.M.] for the crime of first degree robbery." Mr. Morrison then moved the state court for an order dismissing the juvenile petition against T.M.. On April 21, 2004, the state court dismissed the case from its docket. Meanwhile, on April 19, 2004, the United States served a Writ of Habeas Corpus on the Administrator of the Donald R. Kuhn Juvenile Center, where T.M had been detained by the state since January, commanding that the Administrator surrender the defendant to the United States Marshal for an appearance in the United States District Court in Charleston, West Virginia.

## II   Procedural History in Federal Court

On April 19, 2004, the United States filed an Information charging T.M. with "knowingly and unlawfully conspiring to obstruct, delay and affect commerce and the movement of an article and commodity in commerce, by robbery" in violation of 18 U.S.C. § 1951. The Information also alleges that the defendant used and carried a firearm during and in relation to the robbery in violation of 18 U.S.C. § 924(c)(1)(A). As a factual basis for the charge, the government alleges the facts summarized above.

In addition to the Information, the United States filed a Certificate for a Juvenile Proceeding signed by the United States Attorney, as required by 18 U.S.C. § 5032. The certification filed by the United States asserts that there are two bases for federal jurisdiction over this case. First, the United States maintains that "the State of West Virginia refuses to assume jurisdiction over the juvenile." Further, it alleges that "the crime [the juvenile] committed is a crime of violence and there is a substantial federal interest in this case that warrants the exercise of federal jurisdiction."

On May 4, 2004, the United States filed an Amended Information alleging that the defendant violated 18 U.S.C. § 5032 in addition to charging the defendant with the substantive violations of 18 U.S.C. §§ 1951 and 924(c)(1)(A) cited in the original information. The added reference to 18 U.S.C. § 5032 apparently is meant to clarify that the United States is proceeding against the defendant pursuant to the Juvenile Justice and Delinquency Prevention Act (Juvenile Justice Act), 18 U.S.C. §§ 5031–5042. On May 5, 2004, the United States filed a Motion to Transfer Proceedings Against Juvenile to Adult Criminal Prosecution and a Petition for Release, Inspection and Disclosure of Juvenile Records and Information. The court granted the petition to release juvenile records and ordered the records released. After reviewing the records, the United States filed a Brief in Support of Motion to Proceed Against Juvenile as Adult.

On May 21, 2004, the defendant filed a Motion to Dismiss the Information. The defendant argues that the Certification filed by the United States does not satisfy 18 U.S.C. § 5032. Further, the defendant asserts that the Juvenile Justice Act's speedy trial provision has been violated.

## III   Certification for Juvenile Proceeding

Title 18 U.S.C. § 5032 provides that a federal court shall not exercise jurisdiction

over a juvenile case unless one of three limited circumstances exists. Section 5032 states, in pertinent part:

> [A] juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction."

Here, the United States has certified that the state court refused to assume jurisdiction, and that T.M. committed a crime a violence in which there is a substantial federal interest. The defendant argues that neither of these bases for exercising federal jurisdiction is supported by the facts of this case.

■ As an initial matter, the court notes that the government's certification is subject to judicial review.[3] In *United States v. Juvenile Male # 1*, the Fourth Circuit determined that the factual basis for the government's certification is not an unreviewable act of prosecutorial discre-

tion; rather, a court must ensure that federal jurisdiction pursuant to § 5032 has been properly invoked. 86 F.3d 1314, 1321 (4th Cir.1996). The court reasoned that Congress intended for the primary focus of juvenile law to be on rehabilitation within the state system, and that this focus should be "given important consideration in construing the juvenile statutes." *Id.* at 1320. Given this weighty legislative concern, the court determined that Congress did not intend for the presumption of judicial review to be overcome in the area of juvenile justice. *Id.* at 1319–21. Therefore, this court need not accept the government's assertions on their face, but must "review[ ] the stated reasons underlying the government's decision to proceed in federal court." *Id.* at 1321.

## A. Refusal to Assume Jurisdiction

■ In his motion to dismiss the information, the defendant argues that the United States consciously misstated that the state of West Virginia refused to assume jurisdiction over him. The defendant maintains that the state had in fact assumed jurisdiction over him, that he was in state custody for approximately three months, and that the state juvenile court was only days away from adjudicating his case. Further, the defendant argues that at some point in time, the state prosecutor or the United States Attorney's office, or both, decided that they wanted to try the defendant as an adult. Given that it was too late to do so in state court,[4] the defen-

---

3. The Fourth Circuit is the only circuit court which has found the Attorney General's certification of a substantial federal interest subject to full judicial review. *See U.S. v. FSJ*, 265 F.3d 764 (9th Cir.2001); *U.S. v. Doe*, 226 F.3d 672 (6th Cir.2000); *U.S. v. Smith*, 178 F.3d 22 (1st Cir.1999); *U.S. v. Jarrett*, 133 F.3d 519 (7th Cir.1998); *U.S. v. Juvenile Male J.A.J.*, 134 F.3d 905 (8th Cir.1998); *Impounded*, 117 F.3d 730 (3rd Cir.1997); *U.S. v. Juve-*

*nile No. 1*, 118 F.3d 298 (5th Cir.1997); *U.S. v. Wellington*, 102 F.3d 499 (11th Cir.1996).

4. West Virginia Code § 49–5–10 governs the transfer of juvenile cases to adult criminal prosecution. Section 49–5–10(b) states that a court may not make inquiries "relative to admission or denial of the allegations of the charge ... until the court has determined whether the proceeding is to be transferred to

dant asserts that the state and federal offices cooperated to place the case in federal court for the purpose of moving to prosecute him as an adult. The defendant vigorously argues that Congress did not intend that the Juvenile Justice Act serve as a method for federal authorities to cure mistakes made during juvenile proceedings in state court.

In response, the United States contends that "[s]ince the Prosecutor's Office dismissed the charges and declined to prosecute the defendant, the Circuit Court cannot exercise jurisdiction over him. Accordingly, it is appropriate to exercise jurisdiction over defendant under the first justification in 18 U.S.C. § 5032." United States' Response to Defendant's Motion to Dismiss Information (United States' Response to Motion to Dismiss) at 3.

Title 18 U.S.C. § 5032 clearly reflects a preference for state treatment of juvenile cases. This section states that juveniles "shall not be proceeded against in any court of the United States" *unless* the

Attorney General certifies that one of the three limited circumstances exists. When the Juvenile Justice Act was originally passed by Congress in 1974, its application was even narrower, permitting the exercise of federal jurisdiction only when the state lacked or refused to assume jurisdiction or when the state did not have adequate juvenile programs. The Fourth Circuit has noted that these original bases for exercising federal jurisdiction "embodied almost a purely rehabilitative model in which the federal court would only become involved when necessary for the good of the juvenile." *Juvenile Male # 1*, 86 F.3d at 1320; *see also U.S. v. Hill*, 538 F.2d 1072, 1074 (4th Cir.1976) (stating that the purpose of the juvenile statute "is to be helpful and rehabilitative rather than punitive").

■ The few Fourth Circuit cases reviewing certifications based upon a state court's refusal to assume jurisdiction are of little help here.[5] None of the cases address a situation where the state court

criminal jurisdiction." Here, the Kanawha County Circuit Court accepted a plea of not guilty from the juvenile at the arraignment on February 11, 2004. In addition, West Virginia Code § 49–5–10(d)(1) states that "a court shall transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that the juvenile is at least fourteen years of age and has committed ... the crime of robbery involving the use or presenting of firearms or other deadly weapons under [§ 61–2–12]...." This mandatory transfer provision, however, is not triggered until the prosecution makes a motion for such transfer. *See State v. Robert K. McL.*, 201 W.Va. 317, 320, 496 S.E.2d 887, 890 (1997). The motion for transfer must be made at least eight days prior to the date set for the adjudicatory hearing. W. Va.Code § 49–5–10(a). Therefore, in this case, even if transfer to criminal prosecution was not foreclosed by the not guilty plea, the prosecutor was required to bring a motion to transfer by April 12, 2004. The records indicate that no such motion was made.

5. *See U.S. v. Under Seal*, 210 F.3d 363, 2000 WL 305148 (4th Cir.2000) (unpub) (finding that Commonwealth need not explicitly refuse to go forward with the case where on the morning of the scheduled preliminary hearing in state court, a federal agent testified that the state had decided to dismiss the charges against the juvenile and where a letter from a Commonwealth's attorney confirmed that the Commonwealth did not intend to proceed against the juvenile); *Hill*, 538 F.2d 1072 (finding that it was not necessary for state court to begin a formal proceeding and issue and a formal order declining jurisdiction before federal jurisdiction could attach); *see also U.S. v. Ramapuram*, 432 F.Supp. 140, 142 (D.Md.1977), *aff'd*, 577 F.2d 738 (4th Cir.1978), *cert. denied*, 439 U.S. 926, 99 S.Ct. 309, 58 L.Ed.2d 318 (1978) (finding that although statute says state court must refuse to assume jurisdiction, the requirement is met if the refusal originates from a state official who has the authority to make such a refusal under state law).

held a preliminary hearing and an arraignment, appointed counsel, accepted a plea of not guilty from the juvenile, set a trial date, supervised discovery, detained the juvenile for almost three months, and less than a week from trial, declined to continue exercising jurisdiction. Given these facts, it would confound logic to find that the state court refused to *assume* jurisdiction over T.M.. The state court not only assumed jurisdiction over T.M., it exercised that jurisdiction in *every way but* a trial on the merits. The United States apparently interprets § 5032 as permitting the exercise of federal jurisdiction not only when a state court refuses to assume jurisdiction, but also when a state court ceases to exercise its jurisdiction before a case is fully adjudicated. This argument is both contrary to the unambiguous statutory language of § 5032 and the strong preference for federal abstention underlying the certification provision. Accordingly, the court FINDS certification on this basis improper.

The court is also concerned about the defendant's assertion that the State Prosecutor and the United States Attorney together chose to bring this case to federal court on the eve of trial because the state court had missed its chance to try the defendant as an adult. The United States has not admitted or denied the truth of this statement. But if the defendant's assertion is true, then the government's attempted certification on this basis manipulates the Juvenile Justice Act to achieve a goal utterly contrary to its rehabilitative purpose. *See Juvenile Male # 1,* 86 F.3d at 1320.

### B. Substantial Federal Interest

As a second basis for certification under § 5032, the United States asserts that T.M. committed a crime of violence and

that there is a substantial federal interest in this case warranting the exercise of federal jurisdiction. Specifically, the United States argues that the commission of a "heinous violent felony" gives rise to a substantial federal interest. United States' Response to Motion to Dismiss at 3–4. The defendant maintains that there is no substantial federal interest in this case.[6]

■ As discussed above, the original Juvenile Justice Act limited federal jurisdiction over juvenile cases to situations where the state was unable or unwilling to assume jurisdiction over the case. The Act was amended in 1984, however, to permit federal courts to exercise jurisdiction over cases involving a crimes of violence (or other listed crimes) which gave rise to a substantial federal interest. *See* 18 U.S.C. § 5032. This amendment greatly expanded the reach of federal jurisdiction over juvenile cases. *See Juvenile Male # 1,* 86 F.3d at 1320. Nevertheless, "the focus of the juvenile statutes is still on rehabilitation within the state system." *Id.* (citing S.Rep. No. 98–225, at 386 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3529). The "substantial federal interest" requirement therefore serves to restrict the application of the 1984 amendment to those cases "givi[ing] rise to special Federal concerns." *U.S. v. White,* 139 F.3d 998, 1000 (4th Cir.1998) (citing S.Rep. No. 98–225, at 389 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3529). The legislative history of the 1984 amendment provides examples of offenses that give rise to special federal concerns, including "an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant and

---

**6.** The defendant does not contest that the      charged crime constitutes a crime of violence.

willful destruction of property belonging to the United States." *See U.S. v. NJB*, 104 F.3d 630, 635 (4th Cir.1997) (citing H.R.Rep. No. 98–1030, at 389 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3529).

Only one published Fourth Circuit opinion is relevant to whether the "substantial federal interest" requirement under § 5032 has been met in this case.[7] In *United States v. Juvenile Male # 1*, the juvenile defendant was charged with six federal felonies, including carjacking in violation of 18 U.S.C. § 2119. 86 F.3d at 1321. To determine whether a substantial federal interest was implicated, the Fourth Circuit reviewed the legislative history of the carjacking statute *Id.* The court found that the legislative history revealed a Congressional interest in carjacking substantial enough to meet the jurisdictional requirement of § 5032. *Id.* The committee reports all reflected Congressional concern with the rising number of carjackings and the increasing violence of the crimes, and even noted that juveniles were likely to commit carjackings. *Id.* The court concluded that "the penalties and the sense of urgency engendered by the national 'epidemic of motor vehicle theft' and the 'plague' of carjacking [were] strong indicators of more than a run of the mill federal interest in the problem." *Id.* (quoting 138 Cong. Rec. S17,961 (1992) (statement of Sen. Lautenberg)). The court also noted that the circumstances of the case, namely the egregious nature of the carjacking and murder, strongly favored the exercise of federal jurisdiction. *Id.*

To support its assertion that a substantial federal interest exists in T.M.'s case, the government relies solely on *Juvenile Male # 1*. The United States argues that the facts of *Juvenile Male # 1* are "strikingly similar to the facts in this case" because both defendants carried a firearm, both victims were shot by an adult co-defendant,[8] and the penalties in both cases are severe.[9] Response to Motion to Dismiss at 4. The government suggests that *Juvenile Male # 1* stands for the proposition that all heinous, violent felonies give rise to a substantial federal interest.

The government's argument ignores the most important aspect of the Fourth Circuit's analysis in *Juvenile Male # 1* the legislative history of the relevant statute. *See* 86 F.3d at 1321. The court found that "[o]ur review of the carjacking statute *convinces us* that the federal interest here is significant enough to reach the 'substantial interest' threshold of § 5032." *Id.* (emphasis added). Although the court also noted that the violent nature of the carjacking in that case strongly favored the exercise of federal jurisdiction, that statement cannot be separated from the fact that the court's decision was motivated by—and its discussion devoted to—the legislative history of the carjacking statute.

---

7. In *United States v. NJB*, another published Fourth Circuit opinion, the court found that a substantial federal interest clearly exists when the charged offense is listed in the legislative history of the Juvenile Justice Act as an example of a special federal concern. 104 F.3d at 635 (finding that where a case involved a murder related to large-scale drug trafficking, a substantial federal interest existed). *NJB* does not inform the court's decision in this case, because the offenses with which T.M. is charged are not listed in the legislative history of the Juvenile Justice Act. *See id.*

8. The victim in the *Juvenile Male # 1* case was killed. The victim in this case suffered serious injuries, but survived.

9. Carjacking that results in murder exposes a defendant to the death penalty. *See Juvenile Male # 1*, 86 F.3d at 1321. If tried as an adult, T.M. would be exposed to a statutory maximum penalty of 20 years for a violation of § 1951 and from five years to life imprisonment for carrying a firearm during a crime of violence.

*See id.* Thus, *Juvenile Male # 1* does not hold that commission of a heinous, violent felony gives rise to a substantial federal interest, as the government suggests.

■ T.M. is charged with robbery affecting interstate commerce in violation of 18 U.S.C. § 1951, also known as the Hobbs Act. The broad language of the Hobbs Act extends its application to any robbery with a *de minimis* affect on interstate commerce, but the primary aim of the Hobbs Act was to combat labor racketeering. *See U.S. v. Brecht,* 540 F.2d 45, 51 (2d Cir.1976) ("the main purpose of Congress in enacting the Hobbs Act was to combat labor racketeering"); *U.S. v. Staszcuk,* 517 F.2d 53, 57 (7th Cir.1975) (the Hobbs Act was "concerned primarily with the proper differentiation between 'legitimate' labor activity and 'labor racketeering' "); *Carbo v. U.S.,* 314 F.2d 718, 732 (9th Cir.1963) (The Hobbs Act was "particularly aimed at labor racketeering"). Given that the statutory language of § 1951 is so much broader than its legislative purpose, many cases prosecuted under the Hobbs Act will not reflect that legislative purpose. This is one of those cases. T.M. and his adult co-offenders robbed a local pizza delivery man in order to obtain food and money; they were not involved in labor racketeering. Therefore, this case is clearly distinguishable from the circumstances in *Juvenile Male # 1.* The defendant in *Juvenile Male # 1* was charged with a violation of 18 U.S.C. § 2119, which Congress passed specifically to address the carjacking "epidemic," and the defendant's criminal act was precisely the type of criminal act that Congress had targeted. *See* 86 F.3d at 1321. Without the support of legislative history reflecting a substantial federal interest in T.M.'s offense, the government's reliance on *Juvenile Male # 1* is misplaced.

Other cases in this circuit, although not raised by the parties or binding on this court, have addressed the substantial federal interest prong of § 5032. Two unpublished Fourth Circuit cases have found the government's proffered federal interests to be substantial. In *United States v. T.E.S.,* the court found that murder of a federal witness in aid of racketeering clearly gave rise to a substantial federal interest. 165 F.3d 913, 1998 WL 774144 at *3 (4th Cir. 1998) (unpub) (simply stating that "[i]t is difficult to imagine a case that implicates a more substantial federal interest than the prevention of retaliation against and intimidation of federal witnesses"). In *United States v. Nelson,* several factors contributed to the court's finding that a substantial federal interest existed where the juvenile was charged with aggravated bank robbery and conspiracy. 139 F.3d 895, 1998 WL 180481 at *2 (4th Cir.1998) (unpub). Primarily, the court noted that Congress had recently lowered to thirteen the age at which a juvenile may be prosecuted as an adult on a bank robbery charge, suggesting that Congress had a substantial interest in the commission of bank robbery by juveniles. *Id.* In addition, the harshness of the penalty for aggravated bank robbery, the use of a weapon, crossing state lines to commit the robbery, the theft of approximately $192,000 thousand dollars, the fact that the defendant's extensive prior criminal history resulted in mandatory transfer to adult status, and the interest in trying the juvenile and his ten co-offenders together all contributed to the significance of the federal interest in the case. *Id.*

Two district court cases in this circuit also inform this issue. In *United States v. D.R.,* the court found a substantial federal interest where the juvenile was charged with murder in violation of 18 U.S.C. §§ 1111 and 2. 225 F.Supp.2d 694 (E.D.Va. 2002). The primary reason for the court's finding was that the murder occurred on

United States Park Service land. *Id.* at 697. Similar to the Court of Appeals' reasoning in *Nelson*, the district court also noted that the juvenile statute was amended in 1994 to lower the age at which at juvenile charged under § 1111 may be transferred to adult proceedings, and found that there was a significant interest in trying the juvenile with the adults indicted in federal court for the same murder. *See id.*

In *United States v. Male Juvenile*, the court found that no substantial federal interest existed where the juvenile was charged with bank robbery, conspiracy to commit bank robbery, and carrying a firearm during a crime of violence. 844 F.Supp. 280 (E.D.Va.1994). The court reasoned that "a mere glance" at the legislative history of the substantial federal interest requirement "provides ample confirmation that this crime was not intended by Congress to be included among those which would precipitate jurisdiction over a juvenile."[10] *Id.* at 283. The legislative history of the juvenile statute provides examples of offenses which give rise to a substantial federal interest, including "an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where state boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant or willful destruction of property belonging to the United States." *Id.*(quoting S.Rep. No. 98–1030, at 389 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3529). The district court determined that "a single instance of ordinary bank robbery" was clearly distinguishable from the offenses listed in the legislative history. *Id.* at 283–84. Further, the court observed that if ordinary bank robbery offenses created a substantial federal interest, then "the list of offenses that would likewise fall within the ambit of the statute would be extensive. In fact, such concern could be found in virtually any case involving a violent Federal felony and the 'substantial Federal interest' language would be reduced to mere surplusage." *Id.* at 284.[11]

10. This case was decided before *Juvenile Male #1*, where the Fourth Circuit decided that judicial review of the § 5032 certification was permitted. 86 F.3d at 1321. The district court purportedly did not decide whether full judicial review of the certification was appropriate, but instead found that the case failed to raise a substantial federal interest even on a facial review of the certification.

11. The court rejected a number of the government's arguments in favor of exercising jurisdiction. The United States had argued that a substantial federal interest existed because the bank was FDIC insured, the robbery was particularly violent because the defendant threatened to kill bank employees, roughly twenty-five percent of bank robberies in the district were tried in Federal court and those cases usually involve violence, and the defendant had a violent background. *Id.* at 284–85. The court found none of these arguments persuasive, reasoning that (1) the robbery of $2900 obviously did not threaten insolvency for which the FDIC would be liable; (2) the "typical level of violence" employed in this offense cannot establish a substantial federal interest since that is already a separate element that must be met to try a juvenile under § 5032; (3) the fact that the offense is a federal crime that the United States government sometimes chooses to prosecute rather than deferring to state prosecution does not evince the substantial federal interest required for the juvenile statute, because such an interest is not a prerequisite to trying adults in federal court; (4) a juvenile's criminal history does not give rise to a substantial federal interest because that would open the door to all juveniles who have a record and commit a federal offense, "mak[ing] a mockery of the general policy of abstention underlying the certification requirement." *Id.*

It is also worth noting that this case was decided before the Violent Crime Control and Law Enforcement Act of 1994 was passed. Pub.L. No. 103–322 (1994). This act decreased the age at which juveniles charged

*T.E.S.*, *Nelson*, *D.R.*, and *Male Juvenile* all involved violent, armed crimes and harsh penalties, as does the case before the court. In fact, the circumstances in *T.E.S.* and *D.R.* were more violent than this case because those juveniles were charged with murder. But in the three cases finding a substantial federal interest, the decisions were motivated by something more than violence, even serious violence such as murder, or harsh penalties. The decision in *T.E.S.* was based upon the fact that a federal witness was the crime victim. 1998 WL 774144 at *3. The *Nelson* court primarily relied upon Congress's decision to lower the age at which a juvenile could be proceeded against as an adult for bank robbery offenses, finding that this established serious Congressional concern with that particular crime. 1998 WL 180481 at *2, 139 F.3d 895. In addition, the juvenile defendant in *Nelson* had crossed numerous state lines to commit the robbery and stolen a very large amount of money. *Id.* The court's decision in *D.R.* was driven by the fact that the murder had occurred on United States Park Service land. 225 F.Supp.2d at 697. The primary importance of these resoundingly federal factors suggests that armed violence and harsh penalties, without something more, do not add up to a substantial federal interest.[12]

■  In the case before the court, nothing like these motivating factors is present. The government alleges that T.M. and his adult co-offenders robbed a local pizza delivery man of twelve dollars, and that one of the adult co-offenders subsequently shot and injured the victim. This is nothing more than a violent crime which happens to be both a state and federal offense; there is simply no indication that this robbery, albeit violent, gives rise to any special federal concern. Thus, this case is similar to the Eastern District of Virginia's *Male Juvenile* case, where the court found that an "ordinary" bank robbery, though a violent federal offense, did not give rise to a *substantial* federal interest. 844 F.Supp. at 283–84.

The factors offered by the government to establish a substantial federal interest in this case—violence, use of a handgun, and harsh potential penalties—are circumstances generally bound up with crimes of violence. *See Male Juvenile*, 844 F.Supp. at 284. The government's logic would encourage federal prosecution of all juveniles involved in murder, armed robbery, and other violent crimes. Congress made it clear, however, that federal courts should not exercise jurisdiction over all violent crimes because § 5032 provides that the crime charged must give rise to a substantial federal interest *in addition* to being a crime a violence. Thus, there must be something more that reflects the requisite substantial federal interest in the case. Without the benefit of legislative history articulating a substantial Congressional interest in the offense, this something more is not clearly defined; it may take the shape of a special federal interest in a crime victim, statutory changes to the Ju-

with bank robbery could be proceeded against as adults. Given that the *Nelson* court considered this change to reflect a substantial federal interest in juveniles charged with bank robbery, this case may have come out differently upon consideration of that change. *See* 139 F.3d 895, 1998 WL 180481 at *2.

12.  The United States also notes that the four adults charged with the crime are being pros-

ecuted in federal court. Adding this factor to the calculus does not change the court's conclusion. Unless mandatory transfer to adult status is involved, as it was in *Nelson*, this argument puts the cart before the horse. T.M. would be proceeded against in federal court in a juvenile delinquency proceeding separate from his adult co-offenders, unless the court decided to grant the government's motion to transfer to adult status.

venile Justice Act reflecting growing concern with juvenile involvement in a particular type of crime, the commission of a crime on federal land, the theft of large amounts of money insured by the FDIC, or extensive interstate travel to commit the crime. It is, of course, impossible to draw up a complete list of the factors which may give rise to a substantial federal interest. It is clear, however, that T.M.'s offense does not give rise to a federal interest comparable to the substantial interests involved in other cases in this circuit. Accordingly, the court **FINDS** that certification on this basis is inappropriate.

## IV CONCLUSION

Upon review of the government's Certification for Juvenile Proceeding, the court **FINDS** that the requirements of 18 U.S.C. § 5032 have not been satisfied. Contrary to the assertions made in the certification, the state court did not refuse to assume jurisdiction over the juvenile and there is no substantial federal interest in this case. Accordingly, the defendant's Motion to Dismiss the Information is **GRANTED**, and the court **DISMISSES** the Information for lack of jurisdiction. The government's Motion to Transfer Proceedings Against Juvenile to Adult Criminal Prosecution is therefore **DENIED AS MOOT**.

The court **DIRECTS** the Clerk to file this order **WITHOUT SEAL,** and to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal, and **DIRECTS** the Clerk to post this published opinion at *http://www.wvsd.uscourts.gov.*