**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.

T.M.,
           *Defendant-Appellee.*

No. 04-4564

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CR-04-73)

Argued: February 4, 2005

Decided: June 27, 2005

Before WIDENER and SHEDD, Circuit Judges, and
James C. CACHERIS, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

---

Reversed and remanded by published opinion. Judge Shedd wrote the
majority opinion, in which Judge Cacheris concurred. Judge Widener
wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Steven Ian Loew, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West
Virginia, for Appellant. Jane Moran, Williamson, West Virginia, for
Appellee. **ON BRIEF:** Kasey Warner, United States Attorney,
Charleston, West Virginia, for Appellant.

**OPINION**

SHEDD, Circuit Judge:

T.M., when he was just two months shy of his eighteenth birthday, allegedly conspired with four adults in robbing and shooting a pizza deliveryman in Charleston, West Virginia. The United States (the "government") prosecuted the four adults in federal court. Although the state prosecutor initially filed a juvenile proceeding against T.M. in state court, that court eventually dismissed that action. Just two days before that action was dismissed, the government initiated this juvenile proceeding by filing a criminal information against T.M. in federal court. The district court dismissed the information for lack of jurisdiction, concluding that the government had failed to comply with the certification requirements of 18 U.S.C. § 5032. *United States v. A.M.*, 339 F. Supp. 2d 749, 760 (S.D. W. Va. 2004).[1] The government now appeals, and we reverse and remand for further proceedings consistent with this opinion.

I.

The government alleges in the information that T.M. conspired with four adults to rob a pizza deliveryman at gunpoint. One of the adults telephoned the restaurant and asked that a pizza be delivered to a community center in Charleston, West Virginia. When the pizza deliveryman arrived, one of the conspirators walked up to the vehicle and took the pizza. Another conspirator approached the vehicle and struck the deliveryman in the mouth with the butt of a firearm and demanded that he turn over all his money. After the deliveryman handed over his money, one of the conspirators shot him in the back. The bullet pierced the deliveryman's spleen and liver and lodged in his stomach. T.M. was near the vehicle and was carrying a firearm when the deliveryman was robbed and shot.

---

[1]The district court caption identifies the defendant as "A.M." In its order, the district court correctly noted that the defendant's initials are "T.M." *Id.* at 751 n.1.

## II.

Jurisdiction over juvenile proceedings in federal court is governed by 18 U.S.C. § 5032, which is part of the Juvenile Justice and Delinquency Prevention Act. A juvenile alleged to have committed a crime may not be proceeded against in federal court unless the government "certifies to the appropriate district court . . . that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency . . . or (3) the offense charged is a crime of violence that is a felony . . . and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032. Proper certification under § 5032 by the government is necessary to create subject matter jurisdiction over a juvenile proceeding. *United States v. White*, 139 F.3d 998, 999-1000 (4th Cir. 1998).

## III.

The government prosecuted the four adult coconspirators in federal court for their roles in the robbery and shooting of the pizza deliveryman. All four were charged with violating the Hobbs Act, 18 U.S.C. § 1951, by interfering with interstate commerce by robbery. Two of the coconspirators were also charged with violating 18 U.S.C. § 924(c) by using and carrying a firearm during and in relation to the robbery. All four coconspirators pled guilty and were sentenced to significant terms of imprisonment.

T.M. was arrested on state charges and taken into custody on January 20, 2004, the day after the robbery and shooting of the pizza deliveryman. The state prosecutor filed a juvenile petition against T.M., alleging that he participated in the robbery and shooting. T.M. pled not guilty and was detained at a state juvenile detention center pending his trial scheduled for April 20, 2004.

On April 16, four days before the scheduled trial, the state prosecutor informed the government that he intended to move the state court to dismiss the juvenile proceeding against T.M. On April 19, one day before the scheduled state court trial, the government filed an information in the district court, alleging that T.M. violated the Hobbs Act

and used and carried a firearm during the robbery and shooting of the pizza deliveryman. In a separate filing, the government certified, as required by 18 U.S.C. § 5032, that the district court could properly exercise jurisdiction over T.M.'s case on two grounds: (1) the state "refuses to assume jurisdiction" over T.M.; and (2) the alleged offenses are crimes of violence in which there exists a substantial federal interest. Two days later, on April 21, the state court dismissed the juvenile proceeding against T.M. based on the state prosecutor's representation that juvenile jurisdiction over T.M. had ended. T.M. was then transferred to federal custody. On May 4, the government amended its information, alleging the same substantive crimes but specifically citing for the first time § 5032, the statute creating jurisdiction over juvenile proceedings in federal courts.

T.M. moved to dismiss the information against him for lack of subject matter jurisdiction. The district court granted the motion to dismiss, concluding that neither of the bases offered by the government in its § 5032 certification was sufficient to confer jurisdiction over T.M.'s juvenile proceeding. First, the court held that the state court had not "refused to *assume* jurisdiction over T.M. The state court not only assumed jurisdiction over T.M., it exercised that jurisdiction in *every way but* a trial on the merits." *A.M.*, 339 F. Supp. 2d at 755. Second, the district court concluded that jurisdiction was not warranted because T.M.'s alleged offenses did not give rise to a substantial federal interest. *Id.* at 759. The government now appeals the dismissal of the criminal information against T.M.

IV.

A.

Although nine circuits have held that the government's § 5032 certifications are either not subject to judicial review or at most subject to very narrow review for compliance with § 5032, *see United States v. F.S.J.*, 265 F.3d 764, 768 (9th Cir. 2001) (deciding that the Ninth Circuit was joining eight other circuits in holding that § 5032 certifications by the government are subject to, at most, limited judicial review),[2] the Fourth Circuit is the only circuit that requires a more

---

[2]*See United States v. Doe*, 226 F.3d 672 (6th Cir. 2000); *United States v. Smith*, 178 F.3d 22 (1st Cir. 1999); *United States v. Jarrett*, 133 F.3d

searching review of the government's assertions in its § 5032 certifi-cations, *see United States v. Juvenile Male # 1*, 86 F.3d 1314, 1321 (4th Cir. 1996). *But see id.* at 1324 (Wilkinson, J., concurring in result) (contending that government's certification that there is a sub-stantial federal interest in case or offense should not be subject to judicial review). Thus, before assuming jurisdiction over a juvenile proceeding, a court in this circuit must first satisfy itself that its juris-diction has been properly invoked by "reviewing the stated reasons underlying the government's decision to proceed in federal court." *Id.* at 1321.

The government certified that federal jurisdiction over T.M. was proper for the following two reasons: (1) the state court "refuses to assume jurisdiction" over T.M., and (2) both robbery affecting inter-state commerce and using and carrying a firearm during and in rela-tion to a crime of violence are crimes of violence in which there exists a substantial federal interest warranting the exercise of federal juris-diction. Under § 5032, the district court should have assumed jurisdic-tion over T.M.'s juvenile proceeding if *either* of the two bases asserted by the government was valid.

B.

We first review whether the government's first stated basis for jurisdiction — that the state court refuses to assume jurisdiction over T.M. — warrants the exercise of federal jurisdiction. We conclude that it does.

Section 5032(1) provides that the district court may proceed in a case alleging crimes against a juvenile if "the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency." Section 5032 "embodie[s] a clear preference

519 (7th Cir. 1998); *United States v. Juvenile Male, J.A.J.*, 134 F.3d 905 (8th Cir. 1998); *In re: SEALED CASE*, 131 F.3d 208 (D.C. Cir. 1997); *United States v. Juvenile No. 1*, 118 F.3d 298 (5th Cir. 1997); *IMPOUNDED (Juvenile R.G.)*, 117 F.3d 730 (3d Cir. 1997); *United States v. I.D.P.*, 102 F.3d 507 (11th Cir. 1996).

for having juvenile criminal matters handled in the state courts. . . .
[S]ubsection (1) provide[s] for federal jurisdiction if the state was
*unable or unwilling*" to provide a forum for the juvenile proceeding.
*Juvenile Male # 1*, 86 F.3d at 1320 (emphasis added).

We addressed a similar scenario in *United States v. Hill*, 538 F.2d
1072 (4th Cir. 1976). In that case, we determined that jurisdiction was
proper because the state court refused to assume jurisdiction over the
juvenile's case. We relied on a letter from a state court judge indicat-
ing that the state prosecutor did not intend to file a state case against
the juvenile and, therefore, his court would not take any action in
regard to the juvenile. *Id.* at 1076.

In this case, we rely on the state court's dismissal of the juvenile
proceeding against T.M. to conclude that the appropriate state court
"refuses to assume jurisdiction" over T.M.[3] It is immaterial under
§ 5032(1) that the state court in this case initially assumed jurisdiction
over T.M.'s case but later refused to retain jurisdiction over the case.
What matters under § 5032(1) in this case is that the appropriate state
court was no longer willing to assert jurisdiction over T.M. when the
district court considered T.M.'s challenge to the government's § 5032
certification.[4] Because the government properly certified that the state

---

[3]T.M. complains that the government's representation on April 19,
2004 — that the state "refuses to assume jurisdiction" over T.M. — was
not technically correct when made because the state court did not dismiss
the juvenile proceeding against T.M. until April 21, two days later. We
find this timing problem immaterial. When the government made its cer-
tification on April 19, it did so based on the state prosecutor's assurance
that his office intended to move the state court to dismiss the proceeding
against T.M. It was important for the government to take some official
action against T.M. before the state court dismissed the case to ensure
that T.M. was not released from state custody once the state court pro-
ceeding was dismissed. Moreover, any technical error that might have
existed in the original certification was later corrected when the govern-
ment amended the information — soon after the state court proceeding
was dismissed — to assert that § 5032 then provided the proper jurisdic-
tional basis for its federal prosecution.

[4]T.M. argues that principles of abstention and deference to the state in
juvenile matters suggest that federal jurisdiction is not warranted in this
case. We find this argument meritless under the particular facts and cir-
cumstances of this case. Because the state court dismissed its proceeding
against T.M., there was no state proceeding that the district court could
have deferred to or abstained from interfering with.

court was no longer asserting jurisdiction over T.M.'s juvenile proceeding, the district court erred in refusing to assume jurisdiction over the government's case against T.M.

## C.

Next we review the sufficiency of the government's second stated basis of jurisdiction — that at least one of the offenses alleged against T.M. is a crime of violence in which there is a substantial federal interest. We conclude that T.M.'s alleged offense of carrying and using a firearm during and in relation to a robbery — a violation of 18 U.S.C. § 924(c) — warrants the exercise of federal jurisdiction.

Section 5032(3) provides that federal jurisdiction in a case involving a juvenile is proper if the government certifies that "the offense charged is a crime of violence that is a felony . . . and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." In general terms, the issue becomes whether "the crime [is] of a sufficiently serious type that federal resources should be called upon, without regard to the State's willingness or ability to handle the matter." *Juvenile Male # 1*, 86 F.3d at 1320. Whether a "substantial Federal interest" exists is similar to the "sort of discretionary decision more commonly thought of as the type of prosecutorial decisions that are immune from judicial review," so we give the government's decision in that regard more deference. *Id.* at 1319.

The government's § 5032(3) certification must state that (1) the offense is a crime of violence that is a felony; and (2) there exists a substantial federal interest in the case *or* offense to warrant the exercise of federal jurisdiction. T.M. does not contest the first requirement — that a violation of § 924(c) is a crime of violence that is a felony. As for the second requirement, T.M. primarily argues that the offense of carrying and using a firearm during and in relation to a crime of violence is traditionally within the police powers of the state, so there must not be a substantial federal interest in the offense. We find this argument unpersuasive.

We have not devised a definitive test in this circuit to determine whether a substantial federal interest exists in a particular offense.

Our prior cases, however, have placed importance on the severity of the penalty prescribed for the offense and the sense of urgency by Congress in deciding to federalize the crime. *United States v. NJB*, 104 F.3d 630, 635 (4th Cir. 1997); *Juvenile Male # 1*, 86 F.3d at 1321 (concluding that the harshness of the penalties and the sense of urgency are "strong indicators of more than a run of the mill federal interest" in the carjacking statute). Section 924(c) meets both of these criteria.

First, the prescribed penalties for carrying and using a firearm during and in relation to a crime of violence are extremely severe because they involve lengthy and mandatory terms of imprisonment. For the first § 924(c) conviction, the defendant must be sentenced to a term of imprisonment of not less than five years regardless of criminal history or most other mitigating circumstances.[5] 18 U.S.C. § 924(c)(1)(A)(i). For any subsequent § 924(c) convictions, the defendant must be sentenced to a term of not less than twenty-five years for each conviction. *Id.* § 924(c)(1)(C)(i). Moreover, each § 924(c) sentence must run consecutively to, not concurrently with, any other sentences. *Id.* § 924(c)(1)(D)(ii); *Robinson*, 2005 WL 879213, at *11 (requiring imposition of a mandatory minimum sentence of 182 years relating to juvenile defendant's § 924(c) convictions).

Second, the legislative history of § 924(c) demonstrates a keen and continuing attentiveness by Congress to combating the serious national problem caused by the use of firearms in furtherance of crimes of violence. When it originally enacted § 924(c) in 1968, Congress considered crime to be "essentially a local problem that must be dealt with by State and local governments if it is to be controlled effectively." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197. In its original version, § 924(c) provided only for the seizure of any firearm used in the commission of a crime. It made no provision for terms of incarceration. *Id.* at 233. Just three years later, Congress amended § 924(c) to create nonmandatory sentences of not less than one year for a first conviction and

---

[5]The district court may impose a sentence of less than five years only if the government first files a motion for downward departure based on the defendant's substantial assistance. *United States v. Robinson*, 2005 WL 879213, at *11 (4th Cir. Apr. 18, 2005).

not less than two years for subsequent convictions. Pub. L. No. 91-644, 84 Stat. 1880. In 1984, Congress significantly strengthened § 924(c) by requiring mandatory minimum consecutive sentences of at least five years for the first conviction and at least ten years for a second or subsequent conviction. Pub. L. No. 98-473, 98 Stat. 1837. The Senate Report describes § 924(c) violations as "serious and dangerous *federal* offenses." S. Rep. No. 98-225, at 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (emphasis added). The report concludes that § 924(c) "should be completely revised to ensure that all persons who commit federal crimes of violence . . . receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime." *Id.* at 313, 1984 U.S.C.C.A.N. at 3491. Not content with these rigorous provisions, Congress again amended § 924(c) in 1998 to "throttle [the] criminal use of guns" by increasing the minimum sentence for second or subsequent convictions to at least twenty-five years for each conviction. Pub. L. No. 105-386, 112 Stat. 3469. This legislative history demonstrates the sense of urgency and importance that Congress has placed on attempting to deter the criminal use of firearms on the federal level. Accordingly, we conclude that there exists a substantial federal interest in § 924(c) prosecutions.

V.

For the foregoing reasons, we hold that the government's § 5032 certification was proper and sufficient to confer jurisdiction over T.M.'s juvenile proceeding. Therefore, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that a substantial federal interest is shown in T.M.'s alleged offenses of conspiring to obstruct commerce in violation of 18 U.S.C. § 1951 and in carrying a hand gun in the robbery which so affected commerce in violation of 18 U.S.C. § 924(c)(1)(A), both crimes in violation of 18 U.S.C. § 5032.

I.

One of the means of obtaining federal jurisdiction over a juvenile in a criminal proceeding occurs when the Attorney General of the United States certifies that "the offense charged is a crime of violence that is a felony . . . *and that there is a substantial Federal interest in the case or the offense* to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032 (emphasis added).

The "substantial Federal interest" provision is a separate requirement that must be met after it has been determined that the crime is violent and felonious. This condition thus restricts the application of federal jurisdiction to those violent felonies committed by juveniles that also evidence some sort of federal interest justifying the federal government's involvement in the matter. See *U.S. v. White*, 139 F.3d 998, 1000 (4th Cir. 1998) (citing S. Rep. No. 98-225, at 389 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3529 (1984)); *U.S. v. Juvenile Male #1*, 86 F.3d 1314, 1319 (4th Cir. 1996) ("the 'substantial interest' and other prongs of the certification statute act as limits on the federal courts' jurisdiction to act in this sphere."). The fact that the crime is a violent felony alone does not mean that the offense also gives rise to a "substantial Federal interest." See *United States v. Male Juvenile*, 844 F.Supp. 280, 283-84 (E.D.Va. 1994) (concluding that the "substantial Federal interest" requirement was intended to limit federal jurisdiction over juveniles to something less than all violent federal crimes).

The majority, however, by its holding that robbing a pizza delivery man is a crime that gives rise to a "substantial Federal interest," opens the door for a decision that all federal crimes of violence amount to a such an interest. While robbing a pizza delivery man at gunpoint is certainly a violent crime, neither this offense nor the case as a whole presents the scenario that the drafters of this statute envisioned as carrying a "substantial Federal interest." According to the legislative history, the determination of whether a scenario presents a "substantial Federal interest" is to "be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns." *See* S. Rep. No. 98-225, at 389 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3529 (1984). By requiring "*special* Federal concerns" the legislative history plainly means that the case or offense

should manifest concerns that are particular to the federal government, rather than merely State concerns.

In general terms, the two concerns presented in this case are combating violent crimes and juvenile delinquency. While they are both serious, in my opinion, neither of these concerns are "special Federal concerns" that justify removing jurisdiction from the state court. The majority does not state exactly the federal interest or concern presented in this case, rather the argument that it does make in favor of this case satisfying the "substantial Federal interest" is aimed at the violent nature of the crime and the punishment available under 18 U.S.C. § 924. But, as discussed above, a crime of violence is not adequate on its own to show the special federal concern. If it were, the "substantial Federal interest" clause in 18 U.S.C. § 5032 would be without meaning. This leaves juvenile delinquency as the other concern presented. Juvenile delinquency, however, is not a special federal concern, but instead a matter traditionally dealt with by state courts. *See* S. Rep. No. 98-225, at 386 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3526 (1984) (stating the premise that "juvenile delinquency matters should generally be handled by the States"). Consequently, of the two concerns presented in the offense at issue and the case as a whole, neither of them show a federal concern that justifies federal juvenile jurisdiction.

Moreover, the legislative history gives examples of cases that give rise to special federal concerns, including "an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnaping where State boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant and willful destruction of property belonging to the United States." S. Rep. No. 98-225, at 389 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3529 (1984). The offense at issue here, four adults and one juvenile robbing one local pizza delivery man, has no reasonable similarity to the large-scale, far-reaching criminal schemes envisioned as examples of offenses or cases showing "special federal concerns." Because neither this case nor the offense "give rise to special Federal concerns," a "substantial Federal interest" is also absent.

## II.

The government describes the required substantial federal interest in this case in its principal brief, p.8, as:

Defendant was seventeen years and ten months old when he and four adults robbed a restaurant delivery person, beat him and shot him. The four adults in the violent crime were all charged federally, and the defendant should be charged with them. Moreover, there is unquestionably a substantial federal interest in combating gun violence.

And, in the governments reply brief, p.4-5, the substantial federal interest in this case is described:

Defendant possessed a hand gun when he participated in the robbery. Pursuant to 18 U.S.C. § 922(x)(2)(A), it is a crime for a juvenile to possess a hand gun. Therefore, the United States could prosecute for possessing the hand gun . . . . Furthermore, the four adults involved in the violent crime were all charged federally. There is a substantial federal interest in combating gun violence, and the United States' certification under this justification was proper.

These descriptions of the substantial federal interest are a far cry from the requirements of § 5032 as exemplified in the legislative history as assault on or assassination of a federal official, aircraft hijacking, kidnapping when State borders are crossed, major espionage or sabotage, large-scale drug trafficking, and significant and wilful destruction of United States property.

In summary, a crime of violence alone was not intended to and should not be enough to satisfy the "substantial Federal interest" requirement of 18 U.S.C. § 5032. Our holding that a juvenile's robbery of a local pizza delivery man at gunpoint is sufficient to show a "substantial Federal interest" will likely permit any federal felony committed by a juvenile with attendant violence to be tried under federal jurisdiction, and may well permit the same for *any* felony with attendant violence committed by a juvenile.

I would affirm.